## GEORGE VAN·CAMP & SONS·COMPANY *v.* AMER-ICAN CAN COMPANY ET AL.

No. 94. Argued December 5, 6, 1928.—Decided January 2, 1929.

·Mr. *Solon J. Carter,* with whom *Messrs. Frederick E. Matson, James A. Ross, Austin V. Clifford, Harold K. Bachelder,* and *William C. Bachelder* were on the brief, for George Van Camp & Sons Company.

*Mr. Wm. H. Thompson,* with whom *Messrs. L. A. Welles, Samuel D. Miller, Frank C. Dailey,* and *Albert L. Rabb* were on the brief, for American Can Company.

*Mr. Henry H. Hornbrook,* with whom *Mr. Paul Y. Davis* was on the brief, for The Van Camp Packing Company.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This suit was brought in the Federal District Court for the District of Indiana to enjoin violations of § 2 of the Clayton Act, c. 323, 38 Stat. 730. U. S. Code, Title 15, § 13. From a decree dismissing the bill for want of equity, an appeal was taken to the court below. Under § 239 of the Judicial Code as amended (U. S. Code, Title 23, § 346), that court has certified the following questions concerning which instructions are desired for the proper disposition of the cause:

"Question 1. Does section 2 of the 'Clayton Act' (United States Code, Title 15, Section 13) have application to cases of price discrimination, the effect of which may be to substantially lessen competition, or tend to create a monopoly, not in the line of commerce wherein

the discriminator is engaged, but in the line of commerce in which the vendee of the discriminator is engaged?

"Question 2. Where one who makes an article and sells it, interstate, to persons engaged, interstate, in a line of commerce different from that of the maker, discriminates in price between such buyers (said discrimination not being made on account of differences in the grade, quality or quantity of the commodity sold, nor being made as only due allowance for the difference in the cost of selling or transportation, nor being made in good faith to meet competition) and the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in the line of commerce wherein the buyers are engaged, does the maker and seller of the article, making such price discrimination, transgress section 2 of the 'Clayton Act' (United States Code, Title 15, Section 13)?"

The relevant facts upon which the questions are based are set forth as follows:

"The bill charges that appellant, George Van Camp & Sons Company, is engaged, interstate, in the business of packing and selling food products in tin cans, and that appellee Van Camp Packing Company is engaged in the same business, and is a competitor of appellant; and that appellee American Can Company manufactures, in very great quantities, and sells, interstate, to food packers, tin cans used in the food packing industry, and owns the monopoly for certain machines which are necessary for sealing the cans of its manufacture, and that it sells such cans in large quantities to appellant and to appellee Van Camp Packing Company, and leases to them its machines for sealing these cans;

"That the American Can Company is unlawfully discriminating between different purchasers of its commodities, in that the price at which it offered and offers and sold

and sells its said cans to appellee Van Camp Packing Company is 20% below its publicly announced standard prices and the prices at which it contracted to sell and did and does sell its cans of the same kind to appellant, George Van Camp & Sons Company; that the American Can Company furnishes food packers, including appellant, its machines necessary for sealing its said cans at a fixed rental, and furnishes the same machines to the Van Camp Packing Company free of charge; that the American Can Company paid and pays the Van Camp Packing Company large sums of money by way of bonus, discounts, and reductions from the price of cans fixed in contracts between them, none of such bonus, discounts, or reductions being allowed or paid to appellant; and that these discriminations were and are not made on account of differences in grade, quality, or quantity of the commodity sold, nor of the machines leased, nor on account of any difference in the cost of selling or transportation, nor made in good 'aith' to meet competition;

"That the effect of such discrimination is to substantially lessen competition, and tends to create a monopoly in the line of interstate commerce, in which the appellant, George Van Camp & Sons Company, and the appellee Van Camp Packing Company are both engaged, namely, the packing and selling of food products in tin cans.

"There is no allegation in the bill that the discriminations complained of tended to create a monopoly or substantially lessen competition in the line of commerce in which the appellee American Can Company is engaged.

"On separate motions of the several appellees on the ground that said section 2 of the 'Clayton Act' is addressed only to discriminations in price the effect of which may be to substantially lessen competition, or tend to create a monopoly in the business in which the discriminator is engaged, the District Court dismissed the bill for

want of equity, and the appeal is from the decree of dismissal."

Section 2, copied in the margin,* provides that it shall be unlawful for any person engaged in commerce, in the course of such commerce, to discriminate in price between different purchasers . . . where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce. As applied to the present case, the word "commerce" as there used means interstate commerce. Clayton Act, §1.

The pertinent facts, shortly stated, are—that George Van Camp & Sons Company, the complainant, and the Van Camp Packing Company are both engaged in the business of packing and selling food products in tin cans in interstate commerce. The American Can Company manufactures tin cans used in the food-packing industry and sells such cans to the other two companies and leases to them machines for sealing the cans. It sells to the packing company at a discount of twenty per cent. below the announced standard prices at which it sells cans of the same kind to the complainant; it charges complainant a

---

*It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly to discriminate in price between different purchasers of commodities, which commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, where the effect of such discrimination may be to substantially lessen competition or tend to create a monopoly in any line of commerce: *Provided,* That nothing herein contained shall prevent discrimination in price between purchasers of commodities on account of differences in the grade, quality, or quantity of the commodity sold, or that makes only due allowance for difference in the cost of selling or transportation, or discrimination in price in the same or different communities made in good faith to meet competition: *And provided further,* That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade.

fixed rental for the sealing machines, but furnishes them to the packing company free of charge; and it discriminates in other respects. The effect of the discrimination is to substantially lessen competition, and its tendency is to create a monopoly, in the line of interstate commerce in which complainant and the packing company are competitively engaged.

These facts bring the case within the terms of the statute, unless the words " in any line of commerce " are to be given a narrower meaning than a literal reading of them conveys. The phrase is comprehensive and means that if the forbidden effect or tendency is produced in *one* out of *all* the various lines of commerce, the words " in *any* line of commerce " literally are satisfied. The contention is that the words must be confined to the particular line of commerce in which the discriminator is engaged, and that they do not include a different line of commerce in which purchasers from the discriminator are engaged in competition with one another. In support of this contention, we are asked to consider reports of Congressional committees and other familiar aids to statutory construction. But the general rule that " the province of construction lies wholly within the domain of ambiguity," *Hamilton* v. *Rathbone,* 175 U. S. 414, 419, 421, is too firmly established by the numerous decisions of this Court either to require or permit us to do so. The words being clear, they are decisive. There is nothing to construe. To search elsewhere for a meaning either beyond or short of that which they disclose is to invite the danger, in the one case, of converting what was meant to be open and precise, into a concealed trap for the unsuspecting, or, in the other, of relieving from the grasp of the statute some whom the legislature definitely meant to include. Decisions of this Court, where the letter of the statute was not deemed controlling and the legislative intent was determined by a consideration of circumstances

254

apart from the plain language used, are of rare occurrence and exceptional character, and deal with provisions which, literally applied, offend the moral sense, involve injustice, oppression or absurdity, *United States* v. *Goldenberg,* 168 U. S. 95, 103, or lead to an unreasonable result, plainly at variance with the policy of the statute as a whole. *Ozawa* v. *United States,* 260 U. S. 178, 194. Nothing of this kind is; to be found in the present case. The fundamental policy of the legislation is that, in respect of persons engaged in the same line of interstate commerce, competition is desirable and that whatever substantially lessens it or tends to create a monopoly in such line of commerce is an evil. Offence against this policy, by a discrimination in prices exacted by the seller from different purchasers of similar goods, is no less clear when it produces the evil in respect of the line of commerce in which they are engaged than when it produces the evil in respect of the line of commerce in which the seller is engaged. In either case, a restraint is put upon " the freedom of competition in the channels of interstate trade which it has been the purpose of all the anti-trust acts to maintain." *Federal Trade Comm'n* v. *Beech-Nut Co.,* 257 U. S. 441, 454.

. We have not failed carefully to consider *Mennen Co.* v. *Federal Trade Comm'n,* 288 Fed. 774, (followed in *National Biscuit Co.* v. *Federal Trade Comm'n,* 299 Fed. 733), cited as contrary to the conclusion we have reached. The decision in that case was based upon the premise that the statute was ambiguous and required the aid of committee reports, etc., to determine its meaning, a premise which we have rejected as unsound.

Both questions submitted are answered in the affirmative.

*Question No. 1, Yes.*
*Question No. 2, Yes.*