**TRENTON CHEMICAL CO. v. UNITED STATES.**

**No. 11511.**

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1953.

Glenn D. Curtis, Detroit, Mich. (Dickinson, Wright, Davis, McKean & Cudlip and Glenn D. Curtis, Detroit, Mich., on the brief), for appellant.

J. Connor Austin, Detroit, Mich. (Joseph C. Murphy and James S. Soltesz, Detroit, Mich., Frank A. Gallagher, Regional Atty., and Winifred M. DeLaney, U. S. Dept. of Agriculture, Chicago, Ill., on the brief), for appellee.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

Appellant, Trenton Chemical Company, was fined $7,500, after being found guilty by a jury of violating an allocation order, issued under the provisions of Title III of the Second War Powers Act of 1942, as revived and reenacted by Public Law 395, December 30, 1947, 61 Stat. 945. § 633, Title 50, U.S.C.A.Appendix.

Title III of the Second War Powers Act, giving the President the authority to allocate scarce materials in the public interest and to promote the national defense, expired June 30, 1947. § 4(b) of Public Law 395 revived and reenacted Title III of the Act "with respect to the use of grain for the production of distilled spirits or neutral spirits for beverage purposes." § 5 provided that the authority granted to the President could be exercised, to the extent the President directed, by any department, agency, or officer in the executive branch of the Government. By Executive Order 9915, issued December 30, 1947, 12 F.R. 8875, Cong.Serv.1947, p. 2064, the President delegated his authority to the Secretary of Agriculture.

The Secretary of Agriculture, in exercise of this delegated authority, on December 30, 1947, issued an Order entitled "Allocation of Grain to Distillers" (12 F.R. 8879), which established quotas of grain for use by distillers. The Order set forth the finding that "The fulfillment of requirements for defense and for essential civilian needs has resulted in a shortage in the supply of grain for defense needs, for private account and for export, and the following order is deemed necessary and appropriate in the public interest and to promote the national defense." The Order defined grain as follows: "Grain means corn, wheat, grain sorghums, barley, rye, granular wheat flour, granular rye flour, or any other grain or grain product used by a distiller in the manufacture of distilled spirits or neutral spirits for beverage purposes." As soon as the order was issued telegrams were sent to all of the plants engaged in the distilling business, including the appellant, advising them of the order and of the quota for the particular distilling plant. Appellant received the telegram on December 30, 1947 and also a copy of the order on or about December 31, 1947.

Thereafter, the Criminal Information involved in this case was filed against the appellant charging that during the period December 31, 1947 to January 31, 1948, inclusive, the appellant "did knowingly, wilfully and unlawfully use in the manufacture of distilled spirits for beverage purposes, in excess of the amount authorized to be used * * * approximately the following quantities of grain and grain products: Barley Malt, 449,162 pounds, Malt Syrup, 72,884 (pounds), Grain Suspension (Starch Water) 6,510,279 (pounds) in violation of the Order allocating grain to distillers (12 F.R. 8879) and contrary to the provisions of Title III of the Second War Powers Act, 1942, as revised and reenacted by Public Law 395 of the 80th Congress, (61 Stat. 946)." The appellant pleaded not guilty to the charge.

The appellant admitted that it did, at the time and places charged in the Information, use the materials alleged in the amounts alleged. The Government introduced evidence showing the issuance of

the Order, its service upon appellant, that the materials used by appellant were grain products, and were in excess of the quota. The Government witnesses did not testify that the materials used were "grain." Witnesses for appellant testified that the materials used by it were neither grain nor grain products, in that they were so different from grain as to have identities of their own. Appellant contended that the Order was invalid in so far as it attempted to define "grain," the term used in the Act, as including a grain product, and that it acted in good faith in using the materials, in that it had been advised by its attorney that it was not illegal to use grain products in its distilling operations.

The trial judge excluded evidence offered by appellant in support of its contention of good faith, holding good faith on its part to be immaterial if the Order was in fact violated. He also excluded offered testimony showing that the Government did not stop distilleries using molasses or potatoes, that the type of malt used by appellant was never sold for food purposes, that the starch water used by appellant was a by-product from its manufacture of gluten and would have had to be destroyed if not made into alcohol, and protests by appellant to the proposed inclusion of the term "grain products" in the proposed legislation. The Court ruled that the Secretary of Agriculture had the authority to define "grain" as including "grain products," and that the Order was a valid one. He declined to dismiss the Information, and instructed the jury that if it was satisfied beyond a reasonable doubt that the commodities used by appellant, or any one of them, were "grain as defined in the Order" and that such commodity was used in excess of the quota for the manufacture of distilled spirits for beverage purposes with knowledge on the part of the appellant of the Order and of its quota, they should return a verdict of guilty.

The enactment of Public Law 395 was a valid exercise of the war powers, even though actual warfare may have ceased. O'Neal v. United States, 6 Cir., 140 F.2d 908, certiorari denied 322 U.S. 729, 64 S.Ct. 945, 88 L.Ed. 1565; Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881. The power conferred upon the President was validly delegated by him to the Secretary of Agriculture.

Appellant's main contention on this appeal is that the Order of the Secretary was invalid in defining "grain" as including "grain products," in that the Act reenacting Title III of the Second War Powers Act was limited to "the use of grain for the production of distilled spirits or neutral spirits for beverage purposes", and did not refer to grain products. It is well settled that such an order can not exceed or extend the scope provided by its statutory base. Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881; Koshland v. Helvering, 298 U.S. 441, 447, 56 S.Ct. 767, 80 L.Ed. 1268. But it is equally well settled that Congress may use executive officers in the enforcement of a policy declared by it and give authority to such officers to execute the congressional declaration by regulations equivalent to law, which regulations, within prescribed limits, provide the necessary details to effectuate the declared policy. Varney v. Warehime, 6 Cir., 147 F.2d 238, 244. The question is thus presented whether the Order as drawn extended the coverage provided by the Act itself.

We are of the opinion that Congress, in using the general term "grain" intended it to include not only grain before being processed, but also products derived from the grain itself. A contrary construction would defeat the Act's fundamental purpose of conservation of grain, in that a distiller could change grain into a grain product and then use the grain product for the production of distilled spirits. Barley, a grain, could be converted into barley malt, which was one of the products actually used by the appellant. A construction nullifying the effectiveness of a statute will be avoided if possible. Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 392, 60 S.Ct. 907, 84 L.Ed. 1263; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 333, 59 S.Ct. 191, 83 L.Ed. 195. The present Order, in defining grain, followed closely the defi-

nition used in War Food Order 141 (10 F.R. 9381) issued under the provisions of Title III of the Second War Powers Act of 1942, which likewise restricted the use of both grain and grain products by distillers and brewers. We think it is clear that Congress used the word "grain" in its general descriptive meaning rather than in the precise, restrictive meaning urged upon us by appellant, and that the Order did not enlarge upon the provisions of the Act.

■ Using that construction of the Act, we are of the opinion that the rulings of the trial judge were not erroneous. The permitted use of molasses and potatoes by some distillers was not inconsistent with the prohibited use of grain products by the appellant. Nor did the fact that some of the materials used by appellant were not sold for food purposes, cause them to lose their classification as "grain products." Even though in such form they were not useable as a food product, the grain from which they were ultimately derived was no longer available as a food product, and the continued use of such products would necessarily affect the available supply of grain. Paragraph (h) of the Order provided for an administrative proceeding by any person who considered that compliance with the Order would work an unreasonable hardship upon him. Appellant failed to exhaust this administrative remedy. Nor was there such ambiguity in the meaning of the Act as to authorize the Court to consider the evidence offered by appellant in its attempt to have the Act construed otherwise. United States v. Missouri Pacific R. Co., 278 U.S. 269, 278, 49 S.Ct. 133, 73 L.Ed. 322; Van Camp & Sons Co. v. American Can Co., 278 U.S. 245, 253–254, 49 S.Ct. 112, 73 L.Ed. 311.

■ The Grain Conservation Order provided: "Any person who wilfully violates any provision of this section is guilty of a crime and may be prosecuted under any and all applicable laws." Subd. 5 of Title III, Second War Powers Act. § 633, Title 50, U.S.C.A., provided: "Any person who willfully performs any act prohibited * * * by any provision of this subsection (a) or any rule, regulation, or order thereunder * * * shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both." The District Judge declined to permit the appellant to show at the trial that it acted in good faith and on advice of counsel that its acts were not illegal, in using the materials in question. In charging the jury respecting the meaning of the word "wilfully" as used in the Order and the statute, he told the jurors that they were not concerned with the niceties of the word "willful" as used in the Information, "because if the defendant, in a case of this character, in this case, used these materials with knowledge of the Order, with knowledge of the quota allotted to it, and with knowledge that this was in excess of the quota, then it has used these materials willfully within the meaning of that word in this information." The appellant complains of the rulings, contending that the word "willful" when used in a criminal statute means an act done with a bad purpose, that something more is required than knowingly doing an act proscribed by the statute, and that an evil motive to accomplish that which the statute condemns is a necessary element of the crime. It relies chiefly upon United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, and Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, in support of its contention.

In United States v. Murdock, the Court said 290 U.S. at page 394, 54 S.Ct. at page 225. "The word often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But, when used in a criminal statute, it generally means an act done with a bad purpose [citing authorities]". This was repeated with approval in Screws v. United States, where the Court also said, 325 U.S. at page 101, 65 S.Ct. at page 1035: "An evil motive to accomplish that which the statute condemns becomes a constituent element of the crime." But the Court also said in Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418, that "willful * * * is a word of many meanings, its construction often being influenced by its context." And in United States v. Illinois

Central R. Co., 303 U.S. 239, 242, 58 S.Ct. 533, 535, 82 L.Ed. 773, the Court stated the rule to be—"In statutes denouncing offenses involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication." See Hartzel v. United States, 322 U.S. 680, 686, 64 S.Ct. 1233, 88 L.Ed. 1534.

This Court has heretofore had occasion to apply the rule in construing the Second War Powers Act in O'Neal v. United States, 6 Cir., 140 F.2d 908, 910, certiorari denied 322 U.S. 729, 64 S.Ct. 945, 88 L.Ed. 1565, and Gomila v. United States, 6 Cir., 159 F.2d 1006, 1009, in which we held that evidence of bad faith or evil purpose on the part of the defendant was not necessary to constitute a violation of the act, but it was sufficient if the prohibited act was intentional or voluntary. To the same effect are Kempe v. United States, 8 Cir., 151 F.2d 680, 688; United States v. Klass, 3 Cir., 166 F.2d 373, 377. See also Zimberg v. United States, 1 Cir., 142 F.2d 132, 137–138, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573; United States v. Perplies, 7 Cir., 165 F.2d 874, 876; United States v. Stein, 2 Cir., 154 F.2d 254, 255. In our opinion, the rulings complained of were not erroneous.

The judgment is affirmed.