129 F.Supp. 914 (1955)
Michael GLENN, a Minor, by and through his Guardian Ad Litem, Ida Mae Glenn, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 16031.
United States District Court, S. D. California, Central Division.
March 30, 1955.
*915 Samuel A. Rosenthal, Leonard G. Ratner, Norman Warren Alschuler, Los Angeles, Cal., for plaintiff.
Laughlin E. Waters, U. S. Atty., Max F. Deutz, Richard M. Darby, Asst. U. S. Attys., Los Angeles, Cal., for defendant.
MATHES, District Judge.
Plaintiff, a minor now five years old, by his mother as guardian ad litem, invokes the jurisdiction of this court under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to sue for damages for injuries including cerebral palsy and other disabilities, alleged to have been sustained at the time of birth, or soon thereafter, by being dropped on his head by employees of the Dispensary at the United States Naval Air Station in Seattle, Washington.
Plaintiff was born on December 5, 1949, but the original complaint in this action was not filed until almost four years thereafter on November 12, 1953. The Government has pleaded as an affirmative defense the claimed bar of the two-year period of limitations specified in 28 U.S.C. § 2401(b).
The case has been continued from time to time to permit search for witnesses and documentary evidence. At the trial the parties presented for approval a stipulation, the salient provision of which is "that if this court decides that a cause of action is stated by plaintiff's first amended complaint herein which is presently maintainable by plaintiff under the provisions of the Federal Tort Claims Act and in particular under the provisions of Section 2401(b), Title 28, United States Code, judgment may be entered forthwith in favor of plaintiff in the full and total sum of $7,500, which figure shall include all attorneys fees but shall not include costs. * * *"
After hearing a full explanation of the problems incident to possible proof (1) that any negligent act or omission occurred at the time of plaintiff's birth, and (2) that the cerebral palsy from which plaintiff now admittedly suffers was proximately caused by some such negligent act or omission, the Court approved the stipulation and received it in evidence at the request of plaintiff. Thereupon the case was submitted for decision on the stipulation and the briefs on file. In making this semi-compromise submission, both sides expressly reserved all rights of appeal.
Subsection (a) of § 2401 provides for a general limitation of six years for civil actions against the United States. Subsection (a) also provides in part that: "The action of any person under legal disability or beyond the seas *916 at the time the claim accrues may be commenced within three years after the disability ceases." Plaintiff, being an infant, clearly is a "person under legal disability" within the meaning of the statute. [See § 41(20) of Title 28, repealed by Act June 25, 1948, c. 646, § 39, 62 Stat. 992.]
Section 2401(b) of Title 28 provides in part that: "A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues * * *." See United States v. Westfall, 9 Cir., 1952, 197 F.2d 765, 766.
The specific question presented for decision is whether the general provision of subsection (a) of § 2401 tolling the statute of limitations for "any person under legal disability" applies to tort claims against the United States, which are expressly provided for in the next-following subsection (b). To put it another way, does the general language of subsection (a) of § 2401 modify the particular language of subsection (b)?
The Government cites two cases in support of its contention that tort claimants do not fall within the tolling provision of subsection (a). Foote v. Public Housing Com'r of United States, D.C. W.D.Mich.1952, 107 F.Supp. 270, 275; Whalen v. United States, D.C.E.D.Pa. 1952, 107 F.Supp. 112, 113.
The Foote case, so far as relevant here, was a suit by the personal representative of children who had died as a result of injuries received; and Judge Starr there observed, after referring to the Whalen decision, that "the `legal disability' provision in § 2401(a) is not applicable in the present case, because that provision clearly relates only to disability of living persons." 107 F.Supp. at page 276. Obviously, then, Judge Starr never reached the question at bar as to the applicability of the tolling provision of subsection (a) to living persons "under legal disability" who assert claims under subsection (b).
However the Whalen case does support the Government's contention here, and Judge Ganey there observed: "Merely because the subsections now appear under the same heading in the United States Code of 1948, as amended, it does not mean that the first subsection is to control the following one." 107 F. Supp. at page 113.
As was said in Ex Parte Collett, 1949, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207: "The short answer is that there is no need to refer to the legislative history where the statutory language is clear." 337 U.S. at page 61, 69 S.Ct. at page 947.
Subsection (a) of § 2401 states in the plainest possible language that: "The action of any person under legal disability * * * may be commenced within three years after the disability ceases."
The best evidence of what was intended by any enactment will almost always consist in "the words by which the legislature undertook to give expression to its wishes". United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 543-544, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345. Yet where "the meaning of language is plain" the courts may look to legislative history for further evidence, in order to determine whether "giving the words their natural significance * * * leads to an unreasonable result plainly at variance with the policy of the legislation as a whole." See: Ozawa v. United States, 1922, 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199; Chatwin v. United States, 1946, 326 U.S. 455, 464, 66 S.Ct. 233, 90 L.Ed. 198, or whether a certain word, phrase or clause has been employed with a more limited or otherwise different meaning "than might be attributed to it by common practice." Boston Sand & Gravel Co. v. United States, 1928, 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170; United States v. American Trucking Ass'ns, supra, 310 U.S. at page 545, 60 S.Ct. 1059; Duplex Printing Press Co. v. Deering, 1921, 254 U.S. 443, 471-477, 41 S.Ct. 172, 65 L.Ed. 349; United States v. Fisher, 1805, 2 Cranch 358, 385-386, 6 U.S. 358, 385-386, 2 L.Ed. 304.
*917 A brief examination of the legislative history of both subsections of § 2401 will be helpful. The predecessor of subsection (a) of § 2401 was § 41(20) of Title 28 which was repealed with the 1948 revision of the Judicial Code. [62 Stat. 992, § 39 (1948).] Section 41(20) provided in part that: "The claims of married women, first accrued during marriage, of persons under the age of twenty-one years, first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued, entitled to the claim, shall not be barred if the suit be brought within three years after the disability has ceased; but no other disability than those enumerated shall prevent any claim from being barred, nor shall any of the said disabilities operate cumulatively."
The forerunner of subsection (b) of § 2401 was § 942 of Title 28, derived from § 420 of the Federal Tort Claims Act, 28 U.S.C. § 942, repealed by Act of June 25, 1948, c. 646, § 39, which provided that "Every claim against the United States cognizable under this title shall be forever barred, unless within one year after such claim accrued * * * an action is begun * * *." 60 Stat. 845, § 420 (1946). It will be noted that in former § 942 no mention is made of persons under disability. It should also be noted that § 41(20) and § 942 were enacted at widely separated times. Section 41 (20) was first enacted in the Tucker Act of March 3, 1887, see United States v. Greathouse, 1897, 166 U.S. 601, 17 S.Ct. 701, 41 L.Ed. 1130, whereas § 942 was enacted August 2, 1946, as part of the Federal Tort Claims Act.
In sum then the 1948 revision operated to recodify the quoted portion of old § 41(20) into subsection (a) of new § 2401, and to recodify the quoted portion of old § 942 into subsection (b) of new § 2401. And both have since stood as a single, integrated section of the Code. Subsection (b) was amended in 1949 to increase the period of limitations for the bringing of tort actions against the United States from one year to two years. 63 Stat. 62, § 1 (1949).
As Judge Ganey suggests in Whalen v. United States, supra, D.C., 107 F.Supp. at page 113, mere rearrangement or collocation of sections, without more, does not evince legislative intent to change the law. General Inv. Co. v. Lake Shore & M. S. R. Co., 1922, 260 U.S. 261, 278, 43 S.Ct. 106, 67 L.Ed. 244; Page v. Burnstine, 1880, 102 U.S. 664, 669, 26 L.Ed. 268; see Buck Stove & Range Co. v. Vickers, 1912, 226 U.S. 205, 213, 33 S.Ct. 41, 57 L.Ed. 189. Nor does mere codification of existing statutory provisions change their original meaning. Adamowski v. Bard, 3 Cir., 193 F.2d 578, 581, certiorari denied, 1952, 343 U.S. 906, 72 S.Ct. 634, 96 L. Ed. 1324. Nor is change in legislative policy to be deduced from a mere reorganization of the laws for clarity and simplicity. United States v. Ryder, 1884, 110 U.S. 729, 740, 4 S.Ct. 196, 28 L.Ed. 308; Gulf Research & Development Co. v. Schlumberger Well Surveying Corp., D.C.S.D.Cal., 92 F.Supp. 16, mandamus denied, 9 Cir., 1950, 185 F.2d 457; see 82 C.J.S., Statutes, § 271, p. 449.
However, it bears repetition that subsections (a) and (b) of § 2401 were revised along with the general revision of the Judicial Code in 1948, and not merely rearranged. [See Senate Report, 28 U.S.C.A., pp. 365-366 (1948).] It is proper then to turn to the Reviser's Notes for further evidence of Congressional intent. Ex Parte Collett, supra, 337 U.S. 55, 69 S.Ct. 944, 93 L.Ed. 1207.
The pertinent portions of the Reviser's Notes to § 2401 follow:
"Section consolidates provision in section 41(20) of title 28 U.S.C., 1940 ed., as to time limitation for bringing actions against the United States under section 1346(a) of this title, with section 942 of said Title 28. * * *
"Words in subsec. (a) of this revised section, `person under legal disability or beyond the seas at the time the claim accrues' were substituted for `claims * * * of persons under the age of twentyone *918 years, first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond the seas at the time the claim accrued * * *.' (See Reviser's note under section 2501 of this title.)
"Words in said section 41(20), `nor shall any of the said disabilities operate cumulatively' were omitted. (See reviser's note under section 2501 of this title.)
"A provision in said section 41 (20), that disabilities other than those specifically mentioned should not prevent any action from being barred was omitted as superfluous.
"Subsection (b) of the revised section simplifies and restates said section 942, without change of substance.
"Changes were made in phraseology." 28 U.S.C.A. following § 2401.
The two references above: "(See reviser's note under § 2501 of this title)", bring to attention the following excerpts from the notes to § 2501, dealing with the time for filing actions ex contractu in the Court of Claims:
"Words `a person under legal disability * * *' were substituted for `married women first accrued during marriage, of persons under the age of twenty-one years first accrued during minority * * *'. The revised language will cover all legal disabilities actually barring suit. For example, the particular reference to married women is archaic, and is eliminated by use of the general language substituted.
"Words `nor shall any of the said disabilities operate cumulatively' were omitted, in view of the elimination of the reference to specific disabilities. Also, persons under legal disability could not sue, and their suits should not be barred until they become able to sue." 28 U. S.C.A. following § 2501. Emphasis added.
The Congressional policy in enacting § 2401 is clear. It is but the age-old policy of the common law to toll the period of limitations during minority or other recognized legal disability. See: Sims v. Everhardt, 1880, 102 U.S. 300, 309, 310, 26 L.Ed. 87; cf. Sgambati v. United States, 2 Cir., 1949, 172 F.2d 297.
At the very moment § 2501 became law, § 2401(a) and (b) likewise became law. The general equitable considerations against cutting off claims which the injured party is unable to prosecute are equally applicable in the field of torts as in the field of contracts. Inasmuch as the same dangers from stale claims are present, neither the statutory scheme, phraseology, nor arrangement affords any basis in reason or policy for holding that tort claims against the Government should be governed by a harsh rule, while contract claimants enjoy the liberal rule so long known to the common law and the limitations statutes of the various states.
Criticism has been appropriately directed at the moribund doctrine of sovereign immunity from suits, and the courts should take into account the disfavor Congress has evidenced toward it by the enactment of the Federal Tort Claims Act, and its liberalizing amendments. United States v. McGowan, 1938, 302 U.S. 535, 538, 58 S.Ct. 286, 82 L.Ed. 410; Genessee Trustee Corp. v. Smith, 6 Cir., 1939, 102 F.2d 125, 126; accord, United States v. Champlin Refining Co., 1951, 341 U.S. 290, 297, 71 S.Ct. 715, 95 L.Ed. 949; United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 543, 70 S.Ct. 309, 94 L.Ed. 317.
As Mr. Justice Frankfurter so aptly put it in National City Bank v. Republic of China, 1955, 348 U.S. 356, 75 S.Ct. 423, 426: "The claims of dominant opinion rooted in sentiments of justice and public morality are among the most powerful shaping-forces in lawmaking by courts. Legislation and adjudication are interacting influences in the development of law. A steady legislative trend, presumably manifesting a strong social policy, properly makes demands on the judicial process. See James M. Landis, Statutes and the Sources of Law, in Harvard *919 Legal Essays (1934), p. 213 et seq.; Harlan F. Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 13-16." [348 U.S. at 360.]
It is an established rule of construction that a statute should be construed as a whole, or in its entirety. United States v. Alpers, 1950, 338 U.S. 680, 684, 70 S.Ct. 352, 94 L.Ed. 457. It follows as well that a part of the statute, e. g., a section or provision thereof, should also be construed as a whole. United States v. American Trucking Ass'ns, supra, 310 U.S. at page 543, 60 S.Ct. 1059; Pollard v. Bailey, 1874, 20 Wall. 520, 525-526, 87 U.S. 520, 525-526, 22 L.Ed. 376; Brown v. Duchesne, 1856, 19 How. 183, 194, 60 U.S. 183, 194, 15 L.Ed. 595; Marshall v. Andrew F. Mahony Co., 9 Cir., 1932, 56 F.2d 74, 78.
Thus codes enacted as a single comprehensive statute are to be construed as such. Bagley v. Forrester, 5 Cir., 1931, 53 F.2d 831, 832. In like manner, provisions enacted as a single body of law are to be construed together. This is especially true of parts of the Judicial Code which, being directed to the same subject matter, are in pari materia; and each part, D. Ginsberg & Sons v. Popkin, 1932, 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704; Pacific Gas & Elec. Co. v. Securities & Exchange Commission, 9 Cir., 1942, 127 F.2d 378, 382, affirmed, 1945, 324 U.S. 826, 65 S. Ct. 855, 89 L.Ed. 1394, must be reasonably interpreted, harmonized, and effectuated in conjunction with the other parts. Lighting Fixture Supply Co. v. Fidelity Union Fire Ins. Co., 5 Cir., 55 F.2d 110, certiorari denied, 1932, 286 U.S. 558, 52 S.Ct. 641, 76 L.Ed. 1292.
The two subsections (a) and (b) of § 2401, being in pari materia, Bowie v. Gonzalez, 1 Cir., 1941, 117 F.2d 11, 17, should be taken together, compared with each other, and construed as a unit, while bearing in mind that the division of a statute into sections and subsections is usually but an artificial device for the reader's convenience.
It is true, to be sure, that in the case of a codification expressed in doubtful language, the court may examine the original statutes, United States v. Bowen, 1879, 100 U.S. 508, 513, 25 L. Ed. 631; United States v. Hirsch, 1879, 100 U.S. 33, 35, 25 L.Ed. 539; Findlay v. United States, 9 Cir., 1915, 225 F. 337, 350, but this practice is properly limited to cases where doubtful language is used. Arthur v. Dodge, 1879, 101 U. S. 34, 36, 25 L.Ed. 948; Vietor v. Arthur, 1881, 104 U.S. 498, 499, 26 L.Ed. 633; United States v. Sixty-Five Terracotta Vases, C.C.S.D.N.Y., 1883, 18 F. 508, 510. Repealed statutes and legislative history are to be used to resolve doubt, not to create it. See Continental Casualty Co. v. United States, 1942, 314 U.S. 527, 530, 62 S.Ct. 393, 86 L.Ed. 426.
Here, § 2401 embodies time limitations operating in favor of the Government. The general six-year limitation is first set out; next is the tolling provision applying to "any person under a legal disability", followed by the two-year limitation applicable to tort claims. A complete statutory scheme is apparent; the tolling provision is by its terms unlimited in its application.
Furthermore the policy expressed in the plain language of the statute is consistent with Congressional purpose, consistent with the common law since times of old, consistent with the vast majority of all statutes of limitation in force today. Cf. United States v. N. E. Rosenblum Truck Lines, 1942, 315 U.S. 50, 55, 62 S.Ct. 445, 86 L.Ed. 671; United States v. American Trucking Ass'ns, supra, 310 U.S. at page 543, 60 S.Ct. 1059; Holy Trinity Church v. United States, 1892, 143 U.S. 457, 463-465, 12 S.Ct. 511, 36 L.Ed. 226.
The mere fact of enactment at different times of subsections (a) and (b) of § 2401 cannot properly operate to limit the general application of the tolling provision or to change the plain meaning of the words in their context as they stand and would be read and understood by the ordinary person. See: A. Magnano Co. v. Hamilton, 1934, 292 U.S. 40, 46-47, 54 S.Ct. 599, 78 L.Ed. 1109; *920 Northwestern Mut. Fire Ass'n v. Commissioner, 9 Cir., 1950, 181 F.2d 133, 135.
To borrow the language of Mr. Justice Cardozo in Woolford Realty Co. v. Rose, 1932, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128: "The mind rebels against the notion that Congress * * * was willing to foster an opportunity for juggling so facile and so obvious." 286 U.S. at page 330, 52 S.Ct. at page 570.
Where, as here, "Nothing in the legislative history * * * indicates any other purpose in Congress than that expressed by the words of the act," Browder v. United States, 1941, 312 U.S. 335, 338, 61 S.Ct. 599, 601, 85 L.Ed. 862, the Act is to be interpreted by "giving the words their natural significance," Crooks v. Harrelson, 1930, 282 U.S. 55, 61, 51 S.Ct. 49, 75 L.Ed. 156; Van Camp & Sons Co. v. American Can Co., 1929, 278 U.S. 245, 253-254, 49 S.Ct. 112, 73 L.Ed. 311; Ozawa v. United States, supra, 260 U.S. at page 194, 43 S.Ct. 65, at page 67, 67 L.Ed. 199, and legislative history may not properly be resorted to as a device to alter the single plain meaning of the words of the enactment. Ex parte Collett, supra, 337 U.S. at page 61, 69 S.Ct. 944, 93 L.Ed. 1207; Gemsco, Inc., v. Walling, 1945, 324 U.S. 244, 260, 65 S.Ct. 605, 89 L.Ed. 921; Kuehner v. Irving Trust Co., 1937, 299 U.S. 445, 449, 57 S.Ct. 298, 81 L.Ed. 340; Fairport, P. & E. R. Co. v. Meredith, 1934, 292 U.S. 589, 594, 54 S.Ct. 826, 78 L.Ed. 1446.
As Mr. Chief Justice Taney said in Aldridge v. Williams, 1845, 3 How. 9, 44 U.S. 9, 11 L.Ed. 469, "The law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself; and we must gather their intention from the language there used, comparing it, when any ambiguity exists, with the laws upon the same subject, and looking, if necessary, to the public history of the times in which it was passed." 3 How. at page 23, 44 U.S. at page 23.
Taken in toto, the language of § 2401, the legislative history with revision of its component subsections and of the Judicial Code in 1948, and the plain meaning of the words in question as they clearly stand juxtaposed, all compel the conclusion that the policy of the Congress is to toll the statute of limitations for "any person under legal disability" who asserts tort claims, as well as other types of claims, against the Government.
The word "any" in the statute at bar, as in Kilpatrick v. Texas & Pacific R. Co., 1949, 337 U.S. 75, 69 S.Ct. 953, 93 L.Ed. 1223, "means what it says". 337 U.S. at page 77, 69 S.Ct. at page 955; cf. United West Coast Theatres Corp. v. South Side Theatres, D.C.S.D.Cal., 86 F. Supp. 109, affirmed, 9 Cir., 1949, 178 F. 2d 648.
Plaintiff will lodge with the Clerk within ten days findings of fact, conclusions of law and judgment accordingly, to be settled pursuant to local rule 7.