UNITED STATES of America,
Appellee,

v.

August TURNER, Defendant-Appellant.

No. 287, Docket 23804.

United States Court of Appeals
Second Circuit.

Argued May 16, 1957.

Decided June 25, 1957.

Morris K. Siegel, New York City, for appellant. Vincent J. Crowe, New York City, also on the Brief.

Paul W. Williams, U. S. Atty., New York City, for appellee. David Jaffe and Robert Kirtland, New York City, Donald H. Shaw and Arthur B. Kramer, Asst. U. S. Atty., New York City, of counsel.

Before CLARK, Chief Judge, and SWAN and POPE, Circuit Judges.

SWAN, Circuit Judge.

This appeal is from a judgment of conviction, on verdict of a jury, for unlawful possession of a Notice of Classification or draft card, with intent that it be used for the purpose of false identification and representation, in violation of provisions of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 462(b) (2), set out in the margin.[1] The indictment found against appellant was consolidated for trial with an earlier indictment found against John V. Holmes and Bogden Denitch. The appeal asserts error in the order of consolidation, in the trial court's refusal to direct an acquittal of Turner, and in the charge to the jury with respect to aiding and abetting.

The draft card, SSS Form 110, which was the basis for the indictments, had been stolen from the office of local draft board No. 13 after the signature of a member of the board had been affixed to it but before the name of any registrant had been filled in. How or by whom the draft card was stolen does not appear; nor is it material. On December 18, 1953 possession of the stolen card was obtained by Holmes from Denitch, and on the same date Holmes delivered the card to Turner. The latter did business at the Diamond Exchange in New York City as a casher of checks. At the trial Holmes testified that he sold the draft card to Turner for ten dollars; that the purchase was solicited by Turner after Holmes had refused to print false business identification cards for him, and that the draft card delivered to Turner did not then bear the name of any registrant. Turner also testified at the trial. He admitted that he had received the draft card from Holmes but the story he told was that Holmes came to Turner's office, tossed an envelope onto his desk and picked up a ten dollar bill, saying "This is for this," and that the envelope, when opened, contained the draft card and business cards of William Gordon, the registrant named in the draft card.[2] This account of how he came to possess the draft card differed from his previous stories. Several months after he had obtained the card, Turner called in Detective Callow of the City Police Department and showed him the draft card, which then bore the name of William Gordon as registrant. No such person was known at local draft board No. 13. Turner explained to Detective Callow, and later to an F.B.I. agent, that he had bought the draft card and two business cards in the name of William Gordon from Holmes for the price of ten dollars. He said he suspected that false draft cards were being used to identify payees of worthless checks and that he made the purchase "just to see if they were able to produce it."[3]

1. Title 50 U.S.C.A.Appendix, § 462(b) provides:

"(b) Any person (1) who knowingly transfers or delivers to another, for the purpose of aiding or abetting the making of any false identification or representation, any registration certificate, alien's certificate of nonresidence, or any other certificate issued pursuant to or prescribed by the provisions of this title [sections 451–454, 455–471 of this Appendix], or rules or regulations promulgated hereunder; or (2) who, with intent that it be used for any purpose of false identification or representation, has in his possession any such certificate not duly issued to him; * * * shall, upon conviction, be fined not to exceed $10,000 or be imprisoned for not more than five, years, or both. Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of any certificate not duly issued to him, such possession shall be deemed sufficient evidence to establish an intent to use such certificate for purposes of false identification or representation, unless the defendant explains such possession to the satisfaction of the jury. June 24, 1948, c. 625, Title I, § 12, 62 Stat. 622."

2. Turner gave the same account in his testimony before the June 1955 grand jury, which found the indictment against him.

3. Before the February 1955 grand jury, which indicted Holmes and Denitch, Turner's testimony was to the same effect.

■ We see no abuse of discretion in consolidating the two indictments for trial. The first count of the Holmes and Denitch indictment was identical with the single count indictment against Turner, except for the names of the defendants.[4] Both indictments charged a series of events so closely related that all the evidence produced in court would have been admissible if either of the indictments had been brought to trial alone. Hence consolidation was permissible.[5] Although hostility existed between Turner and Holmes, this did not require separate trials; nor was it more prejudicial than if the trials had been separate. See United State v. Cohen, 2 Cir., 124 F.2d 164, 166, certiorari denied sub nom. Bernstein v. United States, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210.

The contention that the trial judge should have directed a judgment of acquittal as to Turner is based primarily on a point of statutory construction. As to this appellant's argument runs as follows: The statute alleged to have been violated by Turner was enacted to prevent or punish the evasion of military service or the impairment of national security, such being the Congressional purposes declared in the first section of the Act. 50 U.S.C.A.Appendix, § 451. Therefore the intent, condemned by § 462(b) (2), of a possessor of a draft card, not duly issued to him, "that it be used for any purpose of false identification or representation," must be an intent to use it to evade military service or otherwise interfere with national security; and since Turner was well beyond draft age when he obtained possession of the stolen notice of draft classification, there was no evidence that he possessed the intent essential to the crime with which he was charged and found guilty. Hence acquittal should have been directed.

■■ We think the restricted construction urged by the appellant cannot prevail over the plain language of the statute. It is true that the stolen draft card (Form SSS No. 110) was not a "certificate issued pursuant to" § 462(b) (2) of the Act. It was never "issued" by the local draft board to anyone. But it was a "prescribed" certificate within the alternative statutory description: "or prescribed by the provisions of this title * * *, or rules or regulations promulgated hereunder."[6] Form SSS No. 110 has been prescribed by regulations promulgated by the Director of Selective Service.[7] The statute declares that "any person" who illegally possesses a "prescribed" certificate "with intent that it be used for *any* [italics added] purpose of false identification or representation" shall be punished. These words are too broadly inclusive to permit limiting the intent to a purpose of evading military service. As the court stated in Lewis v. United States, 92 U.S. 618, at page 621, 23 L.Ed. 513: "Where the language of a statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe." Moreover, a literal interpretation of the statutory words is not inconsistent with the broad purposes of the Act. The use of draft cards for *any* purpose of false identification would cheapen their value as a means of identification and might well be considered as an indirect attack upon the efficiency of the methods provided by Congress for putting into effect Selective Military Service.

■ The appellant further contends that the "most that can be said is that

---

4. The second count of the Holmes and Denitch indictment charged them with unlawfully transferring the draft card in violation of § 462(b) (1) of the Act.

5. United States v. Smith, 2 Cir., 112 F.2d 83, 85; Rules 8 and 13, Federal Rules of Criminal Procedure, 18 U.S.C.A.

6. See note 1, supra.

7. See 3 Code of Federal Regulations § 606.51 (1948 Supp. p. 128); also §§ 623.-5, 623.6 and 623.7.

the evidence offered against Turner tended to prove a violation of subdivision 5 of § 462(b)."[8] He argues that a comparison of subdivision (2) with subdivision (5) shows that the former requires possession of a certificate *validly issued,* and the latter refers to a certificate *purporting* to be issued pursuant to the Act; and since the local board had never issued the certificate to the fictitious William Gordon, the court should have directed an acquittal of Turner. Under the evidence it would seem that Turner could have been convicted of violating subdivision (5) had the indictment so charged. But we cannot accept the contention that the "prescribed" certificate referred to in subdivision (2) relates only to prescribed certificates validly issued. The very terms of subdivision (2) presuppose that the certificate was "not duly issued" to the person in possession of it.

With what intent Turner possessed the "prescribed" certificate was plainly a question for the jury. In view of his conflicting accounts of how he came to possess it there is no reason for surprise that he failed to overcome "to the satisfaction of the jury" the statutory presumption arising from possession of a draft card not duly issued to him. Indeed, without regard to the presumption a verdict of guilty was amply supported by the evidence. Consequently there was no error in refusal to direct an acquittal.

Nor do we see prejudicial error in the court's charge as to aiding and abetting. Barsky v. United States, 83 U.S.App. D.C. 127, 167 F.2d 241, 252, certiorari denied 334 U.S. 843, 68 S.Ct. 1511, 92 L. Ed. 1767; United States v. Knickerbocker Fur Coat Co., 2 Cir., 66 F.2d 388, 390, certiorari denied sub nom. Zuckerkandel v. United States, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581.

The judgment is affirmed.

---

8. Subdivision 5 reads:
"or (5) who has in his possession any certificate purporting to be a certificate issued pursuant to this title [said sections], or rules and regulations promulgated hereunder, which he knows to be falsely made, reproduced, forged, counterfeited, or altered; * * *."