**UNITED STATES of America,**

v.

**David J. MILLER, Defendant.**

United States District Court
S. D. New York.
Dec. 16, 1965.

Robert M. Morgenthau, U. S. Atty.,
by Asst. U. S. Atty. Peter Fleming,
Jr., and Frank M. Tuerkheimer, New
York City, for the United States.

Marvin M. Karpatkin, Rhoda H. Kar-
patkin, Osmond K. Fraenkel, Nanette

Dembitz, Melvin L. Wulf, and Henry M. DiSuvero, New York City, for defendant.

TYLER, District Judge.

Defendant Miller, who has been charged with knowingly destroying and mutilating his Notice of Draft Classification (SSS Form No. 110) (hereinafter "Notice") pursuant to the provisions of 50 Appendix United States Code 462(b), as recently amended by 79 Stat. 586, Public Law 89–152, August 30, 1965, moves to:

1. Dismiss the indictment, or, in the alternative, to

2. Receive a bill of particulars with regard to the charge, and to

3. Discover and inspect various documents and effects, including the charred remains of his aforesaid Notice.

For reasons to be briefly hereinafter discussed, the motion to dismiss the indictment prior to trial is denied, and the motions for particulars and discovery, as will be more specifically delineated, are granted in part and otherwise denied.

## I.

Upon his motion to dismiss, Miller argues variously that: (1) the indictment fails to charge a crime against the United States; (2) the indictment effectively denies or abridges his rights to freedom of speech, assembly and exercise of political rights, all as guaranteed to him by the First, Ninth and Tenth Amendments to the Constitution of the United States; (3) the indictment effectively denies him due process of law under the Fifth Amendment because the underlying criminal statute serves no legitimate legislative purpose; and (4) the indictment would work a deprivation of his right to be free from cruel and unusual punishment as secured to him by the Fifth and Eighth Amendments.[1] All of these claimed deficiencies, as Miller is aware, must be found at this stage, if they are to be found at all, on the face of the indictment or its statutory underpinning.

A. *Contention that the indictment fails to state a crime against the United States.*

▮ In order to put this contention in focus, it is necessary to indicate that defendant's basic argument consists of the following syllogism:

1. Only destruction and mutilation of a "certificate" constitutes a violation of the pertinent provision of Section 462(b).

2. A Notice of Classification is not, as a matter of fact or law, a certificate.

3. Thus, Miller's alleged destruction and mutilation of his Notice does not constitute a violation of the statute.

Simply stated, defendant's second or minor premise is erroneous. Although it may be argued that neither the provisions of Title 50 Appendix nor the regulations thereunder categorically define the Notice (SSS Form No. 110) to be a "certificate", it is plain enough from the face of Section 462(b) as a whole that Congress certainly there used the word "certificate" with intention to embrace, among other Selective Service documents, the Notice in question. See United States v. Turner, 246 F.2d 228, at 230 (2d Cir. 1957).

With an erroneous minor premise, Miller's syllogism necessarily collapses. Beyond this, however, it should be noted that the indictment says much more than "a certificate"; it continues to allege, "to wit, a Notice of Classification (SSS Form 110), issued pursuant to the Universal Military Training and Service Act. * * *" No plainer language in full accord with the plain meaning of the pertinent provisions of Section 462(b) can be imagined; thus, defendant has ample and definite notice of the offense

---

1. Defendant's precise argument here under the Fifth Amendment is unclear; perhaps he would suggest that severe and unusual punishment would constitute a denial of substantive due process.

of which he is being charged, and he does not, as I understand him, argue to the contrary.

B. *Contention that the indictment denies defendant his constitutional rights of free speech, assembly and exercise of political rights.*

As defendant's counsel virtually conceded during oral argument of this motion, there is presently no firm factual basis for raising or passing upon the contentions under the First, Ninth and Tenth Amendments prior to trial of the indictment. Certainly, the statutory language on its face suggests no issues, let alone deprivations of rights, under the Amendments cited. The pertinent part of Section 462(b) simply makes it a crime to "knowingly destroy(s), knowingly mutilate(s) * * *" a Notice or other certificate. The indictment language is essentially that of the statute. Even defendant, then, must perceive that there is nothing on the face of either the statute or the indictment which remotely suggests any problem of free speech or free assembly or free exercise of political rights as guaranteed by the Constitution. Certainly not one of defendant's cited cases comes close to supporting his contentions in this area.

But Miller's lawyers attempt to avoid this obvious point by suggesting that the statute might affect speech or assembly upon certain hypothetical facts. Surely, counsel must know that federal courts cannot decide constitutional questions before they are squarely presented in the context of solidly determined, as opposed to hypothetical, facts. See United States v. Raines, 362 U.S. 17, at 20–21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). Moreover, it does no good at this early stage of the proceedings to suggest further, as defendant does, that mutilation or destruction of a Notice must be considered "symbolic speech" within the ambit of First Amendment safeguards. It can be observed that Miller's citations in support of this proposition are cases involving statutes which, largely by their terms, proscribed "symbolic speech" (e. g. Stromberg v. California, 283 U.S. 359, 52 S.Ct. 532, 75 L.Ed. 1117 (1931) or unreasonably compelled such speech (e. g. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943)) in dereliction of First Amendment protections—something which Section 462(b) (3) on its face does not appear to do.

More significant, defendant's arguments must await a development of the facts at trial. Tempting as it might be to surmise now that Miller almost certainly could effectively exercise his rights of free expression and protest, if such was his intention on the day in question, without the additional and supposedly symbolic act of destroying his card, I reject the temptation simply because it must be assumed in fairness that defendant might develop facts at trial to fairly raise the issue of whether or not his First Amendment rights have been unreasonably restricted by the application of Section 462(b) (3), no matter how rational and necessary that statute appears by its terms. See, e. g., Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); concurring opinion of Harlan, J., in Garner v. State of Louisiana, 368 U.S. 157, at 196–207, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961).

C. *Contention that the indictment denies defendant due process of law under the Fifth Amendment.*

Essentially, defendant's argument here is that the pertinent amendment to Section 462(b) serves no legitimate or rational legislative purpose. In fairness to defendant, it might be more accurate to say that under this general contention, he argues, first, that on its face the statutory language proscribing destruction and mutilation of a Notice neither enhances nor in any way significantly affects the "economic or military capabilities of the United States", and, second, on the basis of its legislative history, the new language of Section 462(b) (3) was passed by Congress without any concern for or purpose under its war powers. To illustrate, defendant points

out, *inter alia*, that destruction of a Notice in itself cannot normally preclude or significantly delay service in the armed forces by the registrant, that the Selective Service System did not request such an amendment to the law and that speeches on the floor of Congress indicated beyond a doubt that, in the minds of the speaking solons at least, the new language was designed for no other purpose than to discourage critics of the government's war policies and objectives in Southeast Asia.

When called upon to decide whether or not legislation comports with necessary standards of substantive due process, the courts must "determine in each case whether circumstances vindicate the challenged regulation as a reasonable exertion of governmental authority or condemn it as arbitrary or discriminatory." Nebbia v. New York, 291 U.S. 502, at 536, 54 S.Ct. 505, at 515, 78 L.Ed. 940 (1934). This is not to say, however, that courts should be governed by subjective views of the political wisdom of the legislative enactment in question; rather, the judicial branch can only be properly concerned with whether or not the statute under attack serves purposes reasonably related to legitimate powers of Congress under the Constitution— and that it so serves without discrimination or caprice.

On its face, the amended language of Section 462(b) meets the standards of substantive due process. As is widely known, for example, the regulations of the Selective Service System for at least the past twenty years have required registrants to carry their Notices of Classification upon their persons. 32 C.F.R. 1617.1 and 1623.5. This circumstance alone suggests that it is by no means irrational for Congress to take the additional step of making it a crime to knowingly destroy one's Notice in order to underscore the long-established duty of a registrant to maintain continuous possession of that document. Nor does it require unusual imagination to conceive of the several desirable and perhaps in some instances crucial administrative advantages to the Selective Service officials and draft boards in a system of personal retention of classification information by each potential draftee. Conversely, it is not unreasonable to infer that advantage may accrue to an individual registrant in such continued retention of the Notice, particularly, for example, upon the not impossible occasion—almost too horrible to contemplate—of an erroneous bureaucratic assumption of a higher classification than that actually assigned by the local board and happily inscribed upon that Notice safely tucked in the registrant's wallet.

Parenthetically, although I do not read defendant's briefs to explicitly make the point, it is conceivable that his serious contention here may amount to this: assuming that the due process test of a "rational basis" has been met for this particular legislation, this is not necessarily an adequate test with respect to possible abridgement of freedom of speech, assembly and the exercise of political rights. In other words, as has been discussed infra at page 62, it is theoretically possible that legislation, valid enough upon grounds of purpose and rationality, may unnecessrily impinge upon Bill of Rights protections. See West Virginia State Board of Education v. Barnette, supra, 319 U.S. at 639, 63 S.Ct. 1178; Cantwell v. State of Connecticut, supra. To be sure, in the words of Mr. Justice Black in Giboney v. Empire Storage Co., 336 U.S. 490, at 498, 69 S.Ct. 684, at 688, 93 L.Ed. 834 (1949), "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute.", and for this reason alone it can be well understood why the government here argues, not without persuasiveness, that upon no conceivable set of circumstances can Miller ever effectively establish infringement of his First Amendment privileges. Nevertheless, this potential issue must be fairly left for that day when the events and circumstances of the alleged offense have been

fully developed as a result of the trial process.

Returning to the main theme, it would be easy to take notice in detail of other obvious benefits to the authorities and the public of the requirement of continuous retention by each individual of his Notice of Classification. Enough has been said, however, to make the obvious point that on its face the amended language of Section 462(b) is a reasonable exercise of the powers of Congress to raise armies in the defense of the United States. It matters not that destruction of his card will not impede the possible call-up of defendant, nor is it of any consequence that almost certainly thousands of men in recent decades have unwittingly failed to carry their cards at all times without ever having been called to show or produce them. See Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, at 487–488, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■■ Most important here, what motivated members of Congress in enacting the amended provisions of Section 462(b) is irrelevant. This court must look only to the statutory language itself, particularly, where, as here, that language is simple and plain on its face. Determination of the state of mind of those legislators to whose speeches defendant specifically points and the other members of Congress voting on this amendment is beyond the competence of this court and in any event would be a largely irrelevant exercise. Sonzinsky v. United States, 300 U.S. 506, at 513–514, 57 S.Ct. 554, 81 L.Ed. 772 (1937). Even assuming that some Congressional members possessed a state of mind or motives totally unrelated to proper legislative purposes, the point remains, as already indicated above, that the simple language of Section 462(b) (3), as amended, clearly relates to legitimate Congressional ends under the war powers. See McCray v. United States, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78 (1904); Barenblatt v. United States, 360 U.S. 109, at 132, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959).

Finally, brief mention may be made of defendant's argument that the amending language is totally at odds with the thrust of the other and older provisions of Section 462, all of which, it is argued, are aimed at striking down fraud in the operation of the Selective Service System. From this, he infers that the new language is rendered "jarring" and unclear, thus requiring the court to look to the legislative history for construction or interpretation. Leaving aside the circumstance that Miller's cited authorities render little or no support for this ingenious assertion, it must be observed that Section 462 is the only "offenses and penalties" or "crimes" section in the Selective Service Act. Thus, Congress must be assumed to have sensibly decided not to add a new "criminal" section merely for the purpose of this brief and simple amendment. More important, it is not necessary or appropriate to look to legislative history when the language, as here, could not be plainer. Van Camp & Sons Co. v. American Can Co., 278 U.S. 245 at 253, 49 S.Ct. 112, 73 L.Ed. 311 (1929). Then, too, Congress certainly was mindful that knowing destruction of a Notice was closely akin to wilfull non-possession of this document, another offense long sanctioned by the same section of the statute. 50 U.S.C.A.App. § 462(b) (6), 32 C.F.R. 1623.5. In short, the 1965 amending language is by no means as "jarring" to or "far out" from the pre-existing statutory scheme as claimed; thus, this and defendant's other arguments in the due process area must be found wanting.

D. *Contention that the amendment to Section 462 is void as imposing cruel and unusual punishment.*

■ As is the case with respect to all crimes spelled out in Section 462, the new offense of knowing destruction and mutilation of a Notice is a felony punishable by imprisonment up to five years and/or by a fine up to the amount of $10,000. Miller argues that this is cruel and unusual punishment barred by the Eighth Amendment. It might be interesting to explore this contention, but the

government is clearly correct in urging that it is prematurely raised. No penalty has been imposed upon Miller, and none may ever be imposed. See Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1, at 104, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). Thus, Miller's arguments here must await the occasion, if and when it comes, of a definite sentence imposed for this offense.

Miller's various grounds for dismissing the indictment are found to be insufficient or premature, and thus his motion to dismiss prior to trial is denied.

## II.

█ Turning to Miller's demand for a bill of particulars, the prosecution in its papers and during oral argument has consented to furnish those particulars sought in paragraphs 1, 3, 4, 5 and 14 of defendant's notice of motion. Most of the remaining demands seek to elicit the prosecution's evidence, a purpose for which a bill of particulars normally cannot serve. Some of the demands, moreover do not seem to relate clearly to any potential issues in the case. Thus, with one exception to be noted hereinafter, the remaining demands serve no proper function of a bill such as clarification of the charge, avoidance of surprise at trial or anticipation of a possible double jeopardy plea in the event of a subsequent criminal complaint or indictment.

The one exception, arguably doubtful as such from the government's point of view, is to be found in paragraph 2 of Miller's demand. Here in substance he requests the date of issuance of his notice, the identity of the issuing draft board and the substantive information contained upon the face of the Notice. In my view, Miller is entitled to this as a matter of simple fairness even though it is alleged that he possessed and then destroyed and thus "abandoned" the original. Such particulars before trial will establish in effect whether or not there were several Notices of Classification furnished to Miller[2] and, if so, which one it is that Miller is charged with destroying.

## III.

█ Miller also seeks to discover and inspect the remains of the Notice which he is said to have burned or destroyed. Additionally, he seeks to inspect and copy any statements or "confessions" which he may have made in writing to the Federal Bureau of Investigation or any government agency.

Curiously, Miller has proffered no affidavit in support of these requests. The prosecutor, however, has made an affidavit stating upon information and belief that Miller burned his Notice and let the remains fall without any attempt to claim or recover them. Thus, as suggested heretofore, the government argues that he has abandoned and forfeited any right to ownership or possession thereof, a prerequisite under Rule 16 for the relief here sought. On the record, the government's argument is not illogical. Beyond this, however, defendant has made no showing that the remains of the Notice may be material to the preparation of his defense or that this particular request is reasonable. Largely for this reason, defendant's demand to inspect the charred remains of his Notice is denied.

█ As to inspection of any statements of his in writing, Miller makes no attempt to describe such in any detail. Indeed, I cannot be sure from his papers or those of the prosecution that any such written statements were taken by or given to a government agent. Particularly under these circumstances, I see no reason to abandon the usually followed rule in this circuit (see United States v. Murray, 297 F.2d .812, at 820 (2d Cir. 1962), cert. den. 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962)) that discovery of such statements is not permissible prior to trial.

---

2. See Miller's demand No. 17, which, in effect will thus also be answered in part by a reply to demand No. 2.

Accordingly, defendant's discovery motion is denied in its entirety, without prejudice, however, to his right to make application to the trial judge for inspection of some or all of these same materials during the trial.

An order should be settled on notice to reflect the foregoing.