**AMERICAN DISTRICT TELEGRAPH,**
Plaintiff,

v.

**DEPARTMENT OF ENERGY, et
al., Defendant.**

Civ. A. No. 82–3671.

United States District Court,
District of Columbia.

Jan. 26, 1983.

Fred Geldon, Washington, D.C., for plaintiff.

Stu Weinberger, Asst. U.S. Atty., Civil Div., Washington, D.C., for Doe.

Robert D. Wallick, Jeffrey P. Moran, Steptoe & Johnson, Washington, D.C., for defendant Morrison-Knudsen.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on plaintiff's motion for a preliminary injunction and defendants' motion to dismiss. Plaintiff American District Telegraph (ADT) is a disappointed bidder on a contract awarded by the defendant Department of Energy (DOE) acting through its agent, defendant Morrison-Knudsen Company. In its motion ADT seeks declaratory and injunctive relief requiring defendants to cancel the contract awarded to the successful bidder and to award the contract to ADT. The defendants have opposed plaintiff's motion. In addition, the government defendants, DOE and Paul Hodel, Secretary of Energy, have moved to dismiss the complaint. DOE argues that the Federal Courts Improvement Act of 1982 has divested the district court of jurisdiction to review post-award challenges to government contract awards.

After reviewing the memoranda submitted by the parties, and after hearing

oral argument in this matter, the court finds that it does have jurisdiction over the complaint. However, for the reasons set forth below, the court finds that the plaintiff has failed to make a showing sufficient to entitle it to a preliminary injunction.

*Background*

This action arises out of an award of a contract to design and install a fire and security alarm system in a chemical processing plant administered by the Department of Energy. The contract was awarded by the Idaho National Engineering Laboratory ("INEL"), a government installation directed and managed by the Department of Energy. Defendant Morrison-Knudsen is the prime contractor with DOE for construction at the site, and is in charge of procurement operations. As part of its tasks, Morrison-Knudsen has been participating in a research and development venture to construct a fire and evacuation system at the Idaho Chemical Processing Plant.

In the summer of 1981, Morrison-Knudsen and DOE began to establish procedures for soliciting and reviewing bids for the design and construction of the system. The defendants first convened a Source Evaluation Board (SEB) composed of members familiar with fire and security alarm systems, to evaluate the proposals which would be received in response to the Request for Proposal (RFP). In September, 1981, the SEB met to establish evaluation criteria for reviewing the proposals, and to design a weighting scheme for the various portions of the system specifications. The SEB eventually decided that technical evaluation criteria would account for 60% of the proposal's score and price considerations would account for 40%.

In March, 1982, Morrison-Knudsen sent the completed RFP for the system to interested offerors, along with a cover letter stating that any proposal would be evaluated against the evaluation criteria found in the RFP. The RFP also included an admonition against "brochuremanship" and unnecessarily costly proposals. It urged the offerors to prepare proposals with maximum economy consistent with the procurement at issue. In May, 1982, Morrison-Knudsen received responses to the RFP from four offerors: Seatronics Protection Systems (the eventual successful bidder); American District Telegraph (plaintiff); Wheeler Electric Inc.; and NASEC. The four proposals were opened and price information was segregated from technical data. This was done, according to Morrison-Knudsen, to ensure that the technical evaluation would be conducted without the potential contaminating influence of price considerations.

In performing the technical evaluation, the SEB decided to establish a ten point scale. Five points were awarded to proposals that met the minimum specifications set forth in the RFP, with more than five points awarded to proposals that exceeded those specifications. On June 10, 1982, the SEB completed its initial rankings and two proposals (ADT and Seatronics) were considered competitive. The SEB then sent a series of questions to the two remaining offerors. These questions were designed to afford offerors an opportunity to upgrade their proposals, particularly in areas where the SEB had detected weaknesses. *See* Affi. Bernard Schroeder, ¶ 20; Affi, Clark Jones, ¶ 15.

On July 6, 1982, ADT responded to the questions. Thereafter, the SEB afforded each bidder an opportunity to make oral presentations to the Board. On August 3, 1982, ADT made such a presentation. This proceeding provided the bidders an opportunity to "sell" their design to the SEB and to engage in a dialogue with respect to the advantages and deficiencies of their system.

Finally, in order to complete their review of the systems, the SEB authorized some of its members to visit installations in which the remaining offerors had installed similar systems. The SEB visited the system installed by ADT at Offutt Air Force Base in Omaha, Nebraska.

By early September, 1982, the SEB had reviewed and prepared the final draft of its evaluation report. This process involved SEB review of each proposal, with final pricing adjustments so that upgraded tech-

nical proposals would have new corresponding cost adjustments. The Secretary of the SEB then compiled all the information and computed the highest ranked offer by using the RFP formula. The SEB then announced the award to Seatronics, the highest ranking bidder.

On October 17, 1982, at the request of ADT, Morrison-Knudsen held a debriefing conference to explain to ADT why it was not selected.

*Procedural History*

On November 24, 1982, ADT filed a formal protest of the award to the Department of Energy. On December 14, 1982, Morrison-Knudsen issued a "Statement of Findings and Recommendations" responding to ADT's protest. After an exhaustive examination of each of ADT's allegations of bidding improprieties, Morrison-Knudsen found that the bidding process had been conducted in compliance with applicable regulations and that the ADT proposal was simply less desirable than that of Seatronics. Morrison-Knudsen recommended that the protest be rejected. Plaintiff's Ex. F. On December 15, 1982, the Department of the Energy also reviewed plaintiff's protest and conducted a careful review of plaintiff's claims of error. The DOE concluded that "no arbitrary selection or abuse of discretion by the Board or the Contracting Officer occurred." Plaintiff's Ex. D.

On December 28, 1982, ADT filed the present action and included a request for a preliminary injunction. ADT alleges that the procedures used by defendants to review the bids violated DOE's procurement regulations at 41 C.F.R. 9–3.805–1(a). That section requires that the RFP contain the criteria for measuring proposals. ADT states that the RFP criteria were unclear and that it read the RFP to solicit proposals that met the minimum specifications of the system at the lowest possible cost. ADT further states that it was inappropriate for the SEB to award additional points for proposals with superior performance features unless the RFP made the computation formula explicit. In Count II of their complaint, ADT alleges that Morrison-Knudsen violated federal procurement regulations found at 41 F.P.R. § 1–3.805–1(b). That provision guarantees that offerors submitting bids be afforded equal opportunity to participate in bid negotiations. Finally, ADT alleges that the defendants violated 41 C.F.R. § 9–3.805–1(c) by failing to point out weaknesses in the plaintiff's proposal prior to award.

*Discussion*

On January 7, 1983, the federal defendants filed an opposition to plaintiff's motion for preliminary injunction. The defendants also filed a motion to dismiss this action for lack of this court's jurisdiction over the subject matter. Defendants, citing Section 133(a) of the Federal Courts Improvement Act of 1982, effective October 4, 1982, state that the district court does not have jurisdiction over post-award contract actions seeking injunctive relief.

Defendant's motion marks the first time in this proceeding at which the jurisdictional issue has arisen. Plaintiff's moving papers did not address the issue of jurisdiction. The plaintiff has, however, been afforded several days within which to file such further papers as they desire, addressing that issue. It has exercised that opportunity, and additional submissions have been carefully considered.

The court finds that it must consider the issue of jurisdiction before it turns to plaintiff's motion for preliminary injunction. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951). On October 1, 1982, Section 133(a) of the Federal Courts Improvement Act of 1982, Pub.L. 97–164, 96 Stat. 25, 28 U.S.C. § 1491, became effective, providing in relevant part:

(3) To afford complete relief on any contract claim brought before the contract is awarded, the [Claims] court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

The government argues that this language divests the district courts of jurisdiction over this matter. The government's argument is constructed of two parts. First, the government states that the section, in clear and unambiguous statutory language, vests exclusive jurisdiction in the Court of Claims to hear *pre-award* contract claims seeking declaratory and injunctive relief. Second, the government extends its first principle and argues that the purposes underlying the Federal Courts Improvement Act of 1982 necessarily require that the district courts are also preempted from hearing *post-award* contract claims such as this one.

The government is able to refer the court to some support for its first principle. In *Opal Manufacturing Co. v. UMC Industries, Inc.,* 553 F.Supp. 131 (D.D.C.1982), Judge Richey read Section 133(a) as vesting exclusive jurisdiction in the Claims Court to review pre-award contract claims. Additionally, in *John C. Grimberg Co., Inc. v. United States,* No. 510–82C, 30 C.C.F. ¶ 70,338 (Ct.Cl. Oct. 7, 1982), the Claims Court likewise found that Section 133(a) vested exclusive jurisdiction in that court in pre-award contract cases.

However, this is a *post-award* case. The cited section of the FCIA applies to "any contract claim brought before the contract is awarded," and not to cases, such as this one, that involving claims for injunctive relief after a contract has been awarded. The statute contains no language that would purport to give the Claims Court exclusive jurisdiction over post-award injunctive cases. The government provides no support for its proposition that Section 133(a) divests the district court of jurisdiction to hear post-award contract disputes. In fact, the two cases cited by the defendants hold that the district court retains jurisdiction to hear post-award contract disputes. In *Opal Manufacturing,* Judge Richey held that the district court did not have jurisdiction to hear a pre-award contract dispute. However, he stated, "The Court's ruling that there is no jurisdiction . . . is premised on the fact that the cross-claim is a pre-award contract claim. Jurisdiction is proper over post-award contract

claims." *Opal Manufacturing, supra,* at 133 n. 3. Similarly, in *John C. Grimberg,* the Claims Court dismissed a post-award contract claim for injunctive relief, holding that the exclusive forum for hearing such disputes was in the United States District Court. *John C. Grimberg,* 30 C.C.F. at 75,-423.

The defendant's argument is also in conflict with the legislative history of the Act. The Senate Report, S.Rep. No. 97–275, 97th Cong., 1st Sess., 22–23 (1981), U.S.Code Cong. & Admin.News 1982, pp. 11, 33 provides in part:

> By conferring jurisdiction upon the Claims Court to award injunctive relief in the pre-award stage of the procurement process, the Committee does not intend to alter the current state of the substantive law in this area. Specifically, the *Scanwell* doctrine as enunciated by the D.C. Circuit Court of Appeals in 1970 is left intact.

Similar language appears in the House Report to the Act. In fact, the House Report, in language more explicit states:

> It is not the intent of the Committee to change existing case law as to the ability of parties to proceed in the district court pursuant to the provisions of the Administrative Procedure Act in instances of illegal agency action. *See e.g., Scanwell Laboratories Inc. v. Schaffer, [Shaffer],* 424 F.2d 859 (D.C.Cir.1970).

H.R.Rep. 97–312, 97th Cong., 1st Sess., 43–44 (1981).

In *Scanwell,* the doctrine left intact by the Act, the Court of Appeals for the District of Columbia Circuit held that a disappointed bidder could seek equitable post-award relief in a district court for his challenge to a contract award. This jurisdictional finding was not contradicted by the Federal Courts Improvement Act, but was explicitly endorsed by the legislative history of the Act.

These statements support the proposition that by its legislative action Congress did not intend to void district court jurisdiction confirmed in *Scanwell* to redress grievances

arising out of contracting activity, at least in cases where, as in this instance, the award precedes suit for equitable relief. *See also John C. Grimberg, supra.*

■ Finally, to endorse the government's position would be to rule that the plaintiff has no forum for his suit. Section 133(a) granted the Claims Court jurisdiction to hear only pre-award disputes. Defendant argues that neither court may review post-award disputes requesting injunctive relief. Even if this court could ignore the contrary authority, the legislative history, and the language of the statute itself, the court could not easily infer that Section 133(a) was intended by Congress to remove plaintiffs' rights to judicial review of post-award contract protests. Accordingly, defendant's motion to dismiss is denied.

*Plaintiff's Motion for A Preliminary Injunction*

The factors which guide this court in its decision to grant or deny an application for injunctive relief are set forth in *Washington Metropolitan Area Transit Authority v. Holiday Tours, Inc.,* 559 F.2d 841 (D.C. Cir.1977). The court must consider whether the moving party has made a strong showing that (1) it is likely to prevail on the merits; (2) likely to suffer irreparable injury; and (3) that the balance of interests favors the plaintiff. *Id.* at 843.

**A. *Likelihood of Success on the Merits***

■ Judicial review of procurement decisions is a very limited one. *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289 (D.C. Cir.1971). In reviewing the reasonableness of the agency's decision, the court must accord proper deference to the agency's discretion in evaluating bids. *Id. See also Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1312 (D.C.Cir.1971); *General Electric Co. v. Kreps,* 456 F.Supp. 468 (D.D.C.1978). Generally, a reviewing court may not overturn a procurement decision unless the party challenging the decision demonstrates that the decision was arbitrary and capricious, or that the procurement procedure involved a clear and prejudicial violation of

regulations. *See e.g. Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir. 1973).

■ Applying this exacting standard of review to this action, this court must determine whether the plaintiff has shown a likelihood that the procurement process was conducted in violation of procurement regulations, or that the decision was arbitrary. The court finds that the plaintiff's showing falls far short of "substantial likelihood of success."

**1. *Violation of DOE Regulations for RFP Evaluation Criteria***

Plaintiff alleges that the defendant did not follow the evaluation process set forth in the RFP. Specifically, the plaintiff alleges that both Morrison-Knudsen and DOE violated DOE procurement regulations and the FRP by failing to clearly set forth and abide by the evaluation criteria in the RFP. Plaintiff states that the technical specifications set forth in the RFP and an admonition against "brochuremanship" in the RFP indicated that the procurement agent sought a proposal that satisfied the design provisions of the specification at the lowest possible price, rather than one with features that exceeded the specifications. Plaintiff states that "[u]nder these criteria, a proposal that satisfied the specifications should have received maximum 'performance' points. Defendants, however, failed to follow these criteria when they did not so award ADT's proposal the maximum number of performance points." Plaintiff's Mem. at 14–15.

The essence of plaintiff's complaint is that the RFP requested that the proposal be prepared with maximum economy and admonished against "brochuremanship" and that the RFP led plaintiff ineluctably to the conclusion that the procuring agent would grant maximum technical points to proposals that met the minimum specifications of the RFP. Plaintiff further states that other bidders submitted proposals that exceeded the minimum specifications and that such proposals were considered favorably in comparison with plaintiff's proposal.

However, the RFP indicates that offerors were advised of the evaluation factors to be used and the relative importance of those factors. The original RFP stated that technical performance capability would constitute 60% of the final evaluation of any bid. Indeed, the cover letter attached to the RFP noted that technical features were by far the most important part of the bid for the system. In addition, the RFP itself does not state that the low bid meeting the minimum requirements will be selected. Rather, the RFP conveys the opposite. It states, in part:

> The subcontract will be awarded to a responsible proposer whose proposal will be most advantageous to Morrison-Knudsen Company, Inc., price, qualifications and other evaluation factors considered.

Plaintiff's Ex. A, RFP ¶ 11 at p. 5.

A second provision in the RFP also should have put ADT on notice of the importance of technical considerations in any proposal. The RFP states:

> Morrison-Knudsen further reserves the right to award the subcontract at its discretion to any proposer other than the one proposing the lowest price, on the basis of its evaluation of the foregoing criteria. Proposers are advised that, although negotiations may follow receipt of proposals, award may be made without discussion on proposals received and thus proposals should be submitted initially on the most favorable terms with respect to price, technical exceptions, completeness and the foregoing criteria.

RFP ¶ 12 at 8.

Plaintiff cannot point to any provision of the RFP that suggests that quality distinctions between minimally qualified proposals will not be made. And indeed, quality distinctions lie at the heart of the procurement process. Rather ADT bases its claim on a single provision of a draft RFP that was deleted from the final RFP and a single warning against "brochuremanship" in the RFP. ADT states that it received a copy of an outdated draft of the specifications from an architect. Those specifications contained the following provision.

> [W]here the requirement of a specification item can be met, but the bidder feels that his proposed approach offers superior performance or features significantly in excess of the specification requirement, this shall be so indicated and the superior features or performance shall be explained in detail.

Plaintiff's Mem. at 16–17.

This provision did not appear in the RFP that was sent to bidders. The final RFP contained a paragraph which stated:

> Morris-Knudsen Company, Inc., discourages "brochuremanship" and unnecessarily costly proposal preparation. Proposals should be prepared with maximum economy, consistent with a particular procurement, to insure that the resources of both proposers and evaluators are efficiently utilized.

RFP ¶ 11 at 4.

ADT claims that the language from the unapproved draft, coupled with the warning against brochuremanship, caused ADT to conclude that it was obligated to submit a basic, no-frills proposal which did not include features beyond those set forth in the specifications.

This court finds plaintiff's argument singularly unconvincing. The RFP clearly emphasized the importance of technical criteria, and defendant would be acting irresponsibly if it did not perform a careful quality review of each proposal. The admonition against brochuremanship is obviously a warning against excessively elaborate or costly presentations. It cannot be reasonably interpreted to prohibit a bidder from submitting a proposal that exceeds the technical specifications of the RFP. More important, this single oblique reference to brochuremanship is opposed by numerous explicit references in the RFP giving full notice that the proposer's methodology would be evaluated against the functional requirements of the specifications, and that the proposal most technically advantageous to the agency would be selected. *See e.g.* RFP ¶ 6(a)(4) at p. 3; RFP ¶ 11 D at p. 8 (selection formula). There is no suggestion in the RFP that a proposal meeting mini-

mum technical specifications will receive maximum technical points. Indeed such a suggestion would render the contractor unable to distinguish between superior and marginal proposals.

Therefore, this court finds that the plaintiff has not shown that defendants violated 41 C.F.R. § 9–3805–1(a), or that the defendant failed to clearly set forth and comply with the evaluation criteria used to evaluate the bids.

### 2. Negotiations Between ADT and Morrison-Knudsen

Plaintiff's second argument in support of its request for injunctive relief is that the defendants did not conduct meaningful negotiations with ADT, and did not (1) advise ADT of weaknesses in its proposal as required by 41 C.F.R. § 9–3.805–1(c), or (2) provide ADT with a full and equal opportunity to participate in price, technical, and other negotiations with the agency as required by FRP § 1–3.805–1(b). In support of its charge that the government and Morrison-Knudsen failed to engage in meaningful negotiations with the plaintiff, the plaintiff first asserts that the defendants failed to alert him to his misconception concerning his interpretation of the RFP. However, as already noted, the RFP was plain and unambiguous and clearly conveyed the evaluation methodology to be used. Defendants had no obligation to detect and correct patently erroneous interpretations of an RFP.

Second, the plaintiff argues that specific features of ADT's proposal were perceived as weak by the SEB, but that these deficiencies were not pointed out with particularity, nor was ADT given an opportunity to upgrade its proposal to remedy the perceived weaknesses. This court finds that

defendants complied with the negotiation requirements of the Federal Procurement Regulations. All bidders were informed of problems with their proposals and were provided with an opportunity to correct them. Bernard Schroeder, Operations Manager for Morrison-Knudsen, points out that a list of questions was submitted to each bidder, "to allow these offerors the opportunity to upgrade their proposals, particularly in the areas of noted weaknesses." Affi. Bernard Schroeder ¶ 20. Similar statements are found in the affidavits of Clark Jones, Subcontract Administrator for Morrison-Knudsen, ¶ 11–17, and William Palica, Project Engineer, at ¶ 16. Mr. Palica comments:

> ADT's proposal as originally submitted had a number of weaknesses or deficiencies. On June 22, 1982, a list of questions outlining the Board's concerns were sent by M–K to ADT with a response requested by July 6, 1982. ADT responded with a letter dated July 1, 1982, and had the further opportunity to discuss these at a meeting with the SEB on August 3, 1982. At this meeting, each one of the 30 problem areas were discussed, as well as other issues which arose from the discussion.

This court finds groundless plaintiff's complaint that appropriate discussions were not held with it and that defects in its proposal were never highlighted.[1]

In addition, this court finds that the defendant negotiated fairly and offered ADT an equal opportunity to participate in negotiations (FPR § 1–3.805–1). All bidders were provided with equal and ample opportunity to persuade the SEB of the merits of their proposal. Questions were formulated by the Board identifying problems with each proposal and written responses were received from ADT. Each of the qualified bidders made a lengthy and detailed presentation to the Board. In addition, the Board

---

**1.** ADT admits defendants provided a lengthy list of questions addressing the technical aspects of its proposal. However, ADT characterizes these questions as defendants' requests for "explanations" or "clarifications" rather than defendants' "identification of deficiencies." Whether the defendants used a softened euphemism such as "request for clarifications" or a more pointed phrase such as "identifica-

tion of problems" is not relevant to plaintiff's claim. A reasonable offeror in the position of ADT would have understood such questions to constitute an identification of areas in which the proposal was deficient, or insufficiently documented. Implicit in the set of questions submitted by defendants is the message that the plaintiff must shore up the areas identified by defendants.

visited the sites of systems installed by the qualified bidders.

The defendants conducted a thorough analysis of the merits of each proposal and negotiated throughout with each bidder. This court finds no violation of the Federal Procurement Regulations in any of defendant's actions. Rather, the procurement agency chose the technically superior system. For this reason, plaintiff has not shown that defendant's action is arbitrary and has failed to establish a likelihood of success on the merits.

### B. *Balance of Interests*

Even if the plaintiff could demonstrate a likelihood of success on the merits plaintiff has not demonstrated that the balance of interests favors him. This court's grant of injunctive relief would severely harm both the successful bidder, Seatronics, and the public. The contract was awarded to Seatronics on October 27, 1982. Work has begun and Seatronics has now a substantial investment in the project. Clearly any delay of the project at this date would severely injure Seatronics.

In addition, this court finds that the issuance of an injunction would harm the government, and the public interest. The fire and alarm system being installed at INEL protects operations which involve the recovery of nuclear fuels. As stated by John Holliday, Project Manager of the Utility Replacement and Expansion Project:

> (a) The ICPP operates to recover useful uranium from government-owned nuclear fuel including fuel from military nuclear propulsion reactor sources. The possibility exists for nuclear or radiological incidents to occur in the event of inadvertent or off-standard conditions. In such instances workers must immediately evacuate their work areas or the ICPP depending on the severity of the problem.

> .    .    .    .    .

> (b) The existing fire alarm system was installed approximately 30 years ago using technology developed in the 1930's. It is considered inadequate for the de-

manding requirements of the ICPP and the INEL.

> .    .    .    .    .

> (c) New facilities such as Fluorinel and Storage Facility and the Coal Fired Steam Generating Facility are designed to tie into the new system rather than the existing one. Any substantial delay of this project could result in those facilities being without adequate fire alarm/evacuation protection at startup.

Affi. Holliday, ¶ 5.

The government has demonstrated that the installation of a modern alarm system is necessary to establish safe conditions at the chemical processing plant. In light of the inadequacy of the present system, the court finds that substantial delay could seriously jeopardize the safety of workers at the plant.

Therefore, this court finds that the public interest weighs heavily in favor of defendants.

For the foregoing reasons, plaintiff's motion for preliminary injunction is denied. An appropriate order accompanies this memorandum.