P. FRANCINI & CO., INC.

v.

The UNITED STATES.

Dawson Construction Company,
Inc., Intervenor.

DAWSON CONSTRUCTION
COMPANY, INC.

v.

The UNITED STATES.

Nos. 28–83C, 134–83C.

United States Claims Court.

March 29, 1983.

Robert L. Ackerly, Washington, D.C., for plaintiff in No. 28–83C; Lawrence H. Mirel, Kenneth J. Ingram, James A. Johnson, and Sachs, Greenebaum & Tayler, Washington, D.C., of counsel.

Donald L. Anglehart, Boston, Mass., for plaintiff in No. 134–83C and for intervenor

in No. 28–83C; Gadsby & Hannah, Boston, Massachusetts, and John Flynn, Frederick L. Wright, and Smith, Currie & Hancock, Atlanta, Ga., of counsel.

William S. Liebman, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; David M. Cohen and Thomas W. Petersen, Washington, D.C., of counsel.

## ON THE MERITS AND ON DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

### OPINION

WHITE, Senior Judge.

This concludes at the trial level proceedings that were instituted on January 18, 1983, in case No. 28–83C, under 28 U.S.C. § 1491(a)(3), *as amended by* section 133(a) of the Federal Courts Improvement Act of 1982 (Pub.L. 97–164, 96 Stat. 25, 40). The litigation relates to the prospective award of a contract by the General Services Administration (GSA) for the conversion and modernization of the U.S. Courthouse in New Haven, Connecticut.

An interlocutory decision was rendered in case No. 28–83C on March 1, 1983 (2 Cl.Ct. 1), on a motion for summary judgment that had been filed by the Government and on procedural-type motions that had been filed by P. Francini & Co., Inc. (Francini), plaintiff, and Dawson Construction Company, Inc. (Dawson), intervenor.

### Further Background Information

A rather detailed outline of pertinent events occurring before March 1, 1983, was included in the earlier opinion.

This part of the present opinion will summarize the events that have occurred in connection with this rather complicated litigation since the court's interlocutory decision was rendered on March 1, 1983.

Pursuant to the leave granted by the court in the decision of March 1, 1983, Francini's supplemental complaint was filed. In the supplemental complaint, Francini asked the court to declare and find that the action of the GSA on February 4, 1983, in cancelling Invitation for Bids No. GS–01B–02306 (the IFB), and contemporaneously announcing that the project for the conversion and modernization of the U.S. Courthouse in New Haven would be readvertised in a new invitation for bids, was "unlawful, illegal and void." [1]

On March 7, 1983, it was agreed, at a conference held in chambers with counsel for all parties, that a final court session would be held on March 15, 1983.

On March 11, 1983, Dawson filed the complaint in case No. 134–83C. In the complaint, Dawson asked the court to declare and find that the cancellation of the IFB "was illegal and invalid and void," and to enjoin the Government "from taking any steps to implement the cancellation of * * * [the IFB] or the resolicitation of the contract" and "from awarding a contract pursuant to * * * [the IFB] to any person other than Dawson." Contemporaneously, Dawson also filed a motion asking that No. 134–83C be consolidated with No. 28–83C. There being no objection by Francini or the Government to this motion, it was allowed on March 14, 1983.

On March 15, 1983, the Government filed a second dispositive motion. This motion was for a summary judgment dismissing Francini's supplemental complaint in case No. 28–83C, or, in the alternative, for the entry of an order declaring that Francini was the lowest responsive bidder under the IFB.

On March 15, 1983, a trial on the merits was held, and oral arguments were made by counsel for all parties on the merits and on the Government's second dispositive motion.

In order to conclude the litigation at the trial level, the court must now determine, first, whether (as contended by Francini and Dawson, and denied by the Government) the GSA's action in cancelling the

---

1. The supplemental complaint, when filed, also asked for injunctive relief, but this request was withdrawn by Francini during a subsequent court session.

IFB, and contemporaneously announcing that the project for the conversion and modernization of the U.S. Courthouse in New Haven would be readvertized in a new invitation for bids, was unlawful.

If the question stated in the preceding paragraph is answered in the affirmative, then it will be necessary for the court to go further and decide whether (as contended by Francini and the Government, and denied by Dawson) Dawson's bid was properly rejected by the GSA as non-responsive to the IFB. (In connection with this second question, Francini and the Government assert, and Dawson concedes, that Francini's bid was responsive to the IFB.)

*The Cancellation Issue*

The pertinent statutory provision for the consideration in connection with the cancellation issue is 41 U.S.C. § 253(b) (1976), which provides in part that, when bids have been received pursuant to required advertising, "all bids may be rejected when the agency head determines that it is in the public interest so to do."

The Federal Procurement Regulations, in 41 C.F.R. § 1–2.404–1 (1982), implement the statutory provision referred to in the preceding paragraph. The governing regulation provides in part as follows:

§ 1–2.404–1 Cancellation of invitation after opening

(a) Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation. * * *

(b) Invitations for bids may be cancelled after opening but prior to award, and all bids rejected, where such action is consistent with § 1–2.404–1(a) and the contracting officer determines in writing that cancellation is in the best interest of the Government for reasons such as the following:

(1) Inadequate, ambiguous, or otherwise deficient specifications were cited in the invitation for bids.

(2) The supplies or services are no longer required.

(3) The invitation for bids did not provide for consideration of all factors of costs to the Government * * *.

(4) Bids received indicate that the needs of the Government can be satisfied by a less expensive article differing from that on which the bids were invited.

(5) All otherwise acceptable bids received are at unreasonable prices. * * *

(6) The bids were not independently arrived at in open competition, were collusive, or were submitted in bad faith. * * *

(7) The bids received did not provide competition which was adequate to insure reasonable prices.

It will be noted from the language of the regulation that, because of the public interest in preserving the integrity of the competitive bid system, an invitation for bids must not be cancelled and all bids rejected after bid opening unless there is "a compelling reason" to do so. The purpose of thus restricting administrative authority to cancel an invitation for bids after bid opening has been explained by the Comptroller General in the following language:

*.* * * The rejection of all bids after they have been opened tends to discourage competition because it results in making all bids public without award, which is contrary to the interests of the low bidder, and because rejection of all bids means that bidders have extended manpower and money in preparation of their bids without the possibility of acceptance. * * * As a general proposition, it is our view that the cancellation after bids are opened is inappropriate when an otherwise proper award under a solicitation would serve the actual needs of the Government. * * * [*Spickard Enterprises, Inc.*, 54 Comp.Gen. 145, 147 (1974).]

The importance of the restriction on administrative authority to cancel invitations for bids after bid opening was emphasized by this court's predecessor, the U.S. Court of Claims, as follows:

* * * To have a set of bids discarded after they are opened and each bidder has learned his competitor's prices is a serious matter, and it should not be permitted except for cogent reasons. * * * [*Massman Construction Co. v. United States,* 102 Ct.Cl. 699, 719, 60 F.Supp. 635, 643 (1945).]

The evidence in the record warrants a factual finding—and it is made—that the cancellation of the IFB, if permitted to stand, will place Francini and Dawson at a competitive disadvantage in connection with the next round of bidding on the courthouse project. Their bids submitted pursuant to the IFB (undoubtedly prepared through a considerable expenditure of manpower and money, in view of the magnitude of the project) have been exposed to their competitors and will constitute "sitting ducks" to serve as targets for competitors in the next round of bidding. Certainly, such a situation tends to undermine the integrity of the bidding process, which § 1–2.404–1 is designed to foster and protect.

Such a conclusion, however, is not the end of the inquiry. Notwithstanding the factors mentioned in the preceding paragraph, it was permissible for the GSA, under the governing regulation, to cancel the IFB if there was "a compelling reason" for such action.

The IFB was cancelled by the GSA after: Dawson had filed a protest with the General Accounting Office (GAO) against the anticipated rejection by the GSA of Dawson's bid as nonresponsive to the IFB, and against any award of the contract being made to Francini; Dawson had filed suit in the United States District Court for the District of Massachusetts to enjoin the GSA from executing a contract with Francini; the GAO had sustained Dawson's protest and held that Dawson's bid was responsive to the IFB; the district court had dismissed Dawson's suit on the GSA's statement of intent to follow the GAO's decision by awarding the contract to Dawson; Francini had filed case No. 28–83C in this court to obtain a judgment declaring and finding that Dawson's bid was nonresponsive to the IFB, and an injunction against the award of a contract to Dawson,[2] and the court had issued a temporary restraining order to maintain the status quo pending further consideration of the matter; and Dawson had filed a motion in the district court, asking that court to reopen the previous suit, which motion was denied by the district court.

■ It is found as a fact that the GSA cancelled the IFB on the recommendation of counsel for the Government in the present litigation, and that such action represented an attempt to moot the pending litigation and make it possible for the GSA, through a new solicitation, to enter into a contract for the conversion and modernization of the U.S. Courthouse in New Haven at an earlier date than would be possible in the absence of cancellation. Thus, the purpose of the cancellation was to expedite the much-needed conversion and modernization of the courthouse in New Haven. This objective, in my opinion, could properly be construed as "a compelling reason" for the GSA's action, which would bring such action within the purview of § 1–2.404–1, if there was a reasonable basis for the GSA's belief that cancelling the IFB and readvertising for new bids would expedite the courthouse project.

The evidence in the record throwing light on the question as to whether there was a reasonable basis for the GSA's conclusion that the cancellation of the IFB would expedite the courthouse project seems to consist of a contemporaneous explanation that was made by the Acting Regional Counsel of the GSA. This explanation referred to advice that had been received from government counsel in case No. 28–83C (case No. 134–83C had not been filed at the time) that if the litigation continued, an appeal would be taken "to clarify the jurisdiction of the new Claims Court," and that such an appeal "would take about four months at

---

2. The complaint also sought to prevent an award to another bidder. This bidder, although notified of the pendency of the litigation, has not participated in it.

least, and due to the summer recess, may not be heard until the Fall, some eight or more months later," whereas "[r]esolicitation would take only four months."

The Acting Regional Counsel did not refer to or analyze the possibility of a continuation of proceedings in the then-pending litigation, including an appeal or appeals, despite the cancellation of the IFB. On the other hand, neither Francini nor Dawson presented evidence establishing that it was reasonably foreseeable, at the time of the cancellation of the IFB, that proceedings in the then-pending litigation would probably continue despite the cancellation of the IFB, with an appeal or appeals, and that this would result in at least as much delay to the courthouse project as would result from permitting the pending litigation to run its normal course in the absence of a cancellation. This state of the record is advantageous to the Government and disadvantageous to Francini and Dawson. The Government did not labor under the burden of proof on this issue. Instead, the burden of proof was on Francini and Dawson.

A presumption of regularity supports the official acts of public officers, and in the absence of clear evidence to the contrary, it must be presumed that they have properly discharged their official duties. *United States v. Chemical Foundation,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). In this connection, courts have said that the party attacking the legality of administrative action in the procurement field has the heavy burden of proving that such action was irrational or clearly illegal. *E.g., Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir. 1973); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983) (Lydon, Judge).

It is also pertinent to note, in this connection, the prevailing view among courts that determinations in procurement matters should ordinarily be left to the discretion of administrative officials exercising procurement authority, and that the proper scope of judicial review over administrative determinations in the procurement field is relatively narrow. Court decisions have indicated that judicial review in such cases should be limited to determining whether the administrative action under attack (1) lacked any rational basis (*e.g., Princeton Combustion Research Laboratories, Inc. v. McCarthy,* 674 F.2d 1016, 1021–22 (3rd Cir. 1982); *Rossetti Contracting Co. v. Brennan,* 508 F.2d 1039, 1042–43 (7th Cir.1974); *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (D.C.Cir.1971); *Baird Corp. v. United States, supra,* 3 USCCR No. 14, slip op. at 3), or (2) involved a clear and prejudicial violation of an applicable statute or regulation (*e.g., Kentron Hawaii, Ltd. v. Warner, supra,* 480 F.2d at 1169; *see also Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1270–71 (5th Cir.1978).

In view of the admonitions concerning the necessity for judicial restraint in reviewing administrative actions on procurement matters, the failure of Francini and Dawson to discharge their heavy burden of proving that there was no rational basis for the GSA's conclusion that the cancellation of the IFB would expedite the courthouse project in New Haven, and the presumption of legality supporting the decisions of duly authorized administrative officials, it is held that the cancellation of the IFB did not violate 41 C.F.R. § 1–2.404–1 and was permissible.

The holding stated in the preceding paragraph makes it unnecessary to consider whether Dawson's bid was properly rejected by the GSA as nonresponsive to the IFB.

*Conclusion*

For the reasons stated in the opinion, it is concluded that neither Francini nor Dawson is entitled to a declaratory judgment, and that Dawson is not entitled to injunctive relief.[3]

The complaints in cases Nos. 28–83C and 134–83C will therefore be dismissed.

---

3. As stated in fn. 1, Francini at one time requested injunctive relief, but subsequently withdrew such request.

**12**

In view of the decision on the merits, the Government's dispositive motion is denied as moot.

IT IS SO ORDERED.