**CADDELL CONSTRUCTION CO., INC., Plaintiff,**

v.

**John F. LEHMAN, Jr., Secretary of the Navy; Captain Greenwall; Captain Wells; Commander John C. Elkins; L. Sparks and Lorraine Rhoden, Defendants.**

**Civ. A. No. 284–223.**

United States District Court,
S.D. Georgia,
Brunswick Division.

Jan. 2, 1985.

Michael A. Caddell, Bracewell & Patterson, Houston, Tex., for plaintiff.

Lawrence B. Lee, Asst. U.S. Atty., Savannah, Ga., for defendants.

## ORDER

ALAIMO, Chief Judge.

Before the Court is the Government's motion to dismiss for lack of subject matter jurisdiction. The Government asserts that exclusive jurisdiction as to plaintiff's claim for injunctive relief is vested in the United States Claims Court pursuant to § 133(a)(3) of the Federal Courts Improvement Act ("FCIA") of 1982, 28 U.S.C. § 1491(a)(3) (1982 & Supp. II 1984). After an exhaustive review of the relevant case precedent and legislative history, the Court is of the opinion that the motion should be sustained.

**BACKGROUND**

On September 21, 1984, the United States Navy issued an invitation for bids ("IFB") for the construction of a new administration and communications building at the Navy Submarine Base in Kings Bay, Georgia. The Navy office issuing the bid invitations was the Office in Charge of Construction ("OICC"). Prior to issuing this bid, and in furtherance of the federal governmental policy of promoting small business, 50 U.S.C.App. § 2151(a), (d), the Navy determined that only small business concerns[1] would be eligible for award of the contract to construct the facilities.

The Navy sent out IFB's to more than 800 firms which it believed would be interested in bidding on the project and later sent out copies of the IFB plans and specifications to companies which subsequently requested them. Shortly thereafter, however, the Navy issued two amendments which resulted in significant alterations to these plans. In particular, the amendments affected provisions concerning liquidated damages, the fiber optics transmission system, the borrow site, the contractor quality control program and the interior telephone system.

On November 1, 1984, the sealed bids were opened and, to the Navy's surprise, it was discovered that only two companies had submitted bids on the construction of the project. Plaintiff's bid of $8,310,000 was lower than Robert Gay Construction Company's bid of $8,520,000. The Government's publicly announced estimate of $7,300,000 was some 13.8% below the plaintiff's bid and 16.7% below the higher bid.

After reviewing the IFB for errors and ambiguities, the Navy discovered a "serious error in the provision concerning liquidated damages for unexcused delays in completing the project." Government's Proposed Findings of Fact, at 5. In the original IFB, the amount of damages estimated by the Navy was about $1,600 per day. Then, sometime in the autumn of

---

**1.** According to 15 U.S.C. § 632, a "small business concern" is a business which is independently owned and operated and which is not dominant in its field of operation. For a more thorough definition of the small business concern, *see id.*

1984, the Navy decided in several instances to substitute an actual damage estimate of $4,700 per day for liquidated damages. The actual damage figure inserted in the amendments, however, was in excess of $11,000 per day, or seven times the amount originally included in the IFB.

After completing further review of the IFB, the Navy uncovered additional errors, including "omissions and ambiguities in the specifications for the irrigation system, vault, borrow site, and the chilled water system." Government's Proposed Findings of Fact, at 6–7. Also, Navy personnel discovered IFB provisions which either were in excess of the Government's needs in installing the Trident facilities or were inappropriate at that time. *Id.* at 7. As a result of these various errors, omissions, ambiguities and excessive IFB requirements, Navy supervisors, including defendants Greenwall, Wells, Elkins and Sparks, decided to reject both bids, cancel the IFB and readvertise the project using a new package and a new bid invitation.[2] Apparently, the Navy hopes that these new plans will "result in the submission of lower bids by a larger number of qualified small business concerns." *Id.* at 8.

Three weeks later, on November 28, 1984, plaintiff filed the case at bar alleging that the Navy's action in rejecting its bid and canceling the IFB was arbitrary and capricious. Plaintiff contends that the rights of the parties can best be determined by a declaratory judgment pursuant to 5 U.S.C. § 701 *et seq.* and 28 U.S.C. §§ 2201, 2202. More specifically, plaintiff requests that this Court issue: (1) a preliminary injunction preventing the resolicitation of the bids; (2) a declaration that the actions taken by the Navy were arbitrary and capricious and in violation of the statutes regulating the distribution of defense contracts to small business concerns; (3) a declaration that plaintiff submitted the lowest responsive bid; and, (4) a permanent injunction requiring the Navy to award the project to plaintiff at its bid in accordance with the provisions of the original IFB.

Defendants responded with a motion to dismiss for lack of subject matter jurisdiction asserting that the FCIA vests exclusive jurisdiction for all pre-award contract claims with the United States Claims Court. Defendants urge this Court to adopt the plain and literal meaning of this statutory provision and reject the liberal construction that some courts have reached after reviewing the legislative history.

In its reply brief, plaintiff has put forth many arguments in an effort to save this

---

**2.** According to 41 U.S.C. § 253(b) (1982), the Government may cancel all bids which have been received pursuant to the required advertising "when the agency head determines that it is in the public interest so to do." Furthermore, certain provisions of the Federal Procurement Regulations ("FPR") implement this statutory provision. *See* 41 C.F.R. § 1–2.404–1 (1984), which provides as follows:

§ 1–2.404–1 Cancellation of invitation after opening

(a) Preservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid, unless there is a compelling reason to reject all bids and cancel the invitation.

(b) Invitations for bids may be cancelled after opening but prior to award, and all bids rejected, where such action is consistent with § 1–2.404–1(a) and the contracting officer determines in writing that cancellation is in the best interest of the Government for reasons such as the following:

(1) Inadequate, ambiguous, or otherwise deficient specifications were cited in the invitation for bids.

(2) The supplies or services are no longer required.

(3) The invitation for bids did not provide for consideration of all factors of costs to the Government.

(4) Bids received indicate that the needs of the Government can be satisfied by a less expensive article differing from that on which the bids were invited.

(5) All otherwise acceptable bids received are at unreasonable prices.

(6) The bids were not independently arrived at in open competition, were collusive, or were submitted in bad faith.

(7) The bids received did not provide competition which was adequate to insure reasonable prices.

*See P. Francini & Co., Inc. v. United States,* 2 Cl.Ct. 7, 9 (1983) (court found "compelling reason" for Government's cancellation of its bid solicitation).

Court's jurisdiction over the matter. First, plaintiff contends that, because the Navy canceled the bid solicitation prior to the time in which this action was filed, the parties are not in a "pre-award" posture. Plaintiff asserts, therefore, that this Court must retain jurisdiction here because the Claims Court's jurisdiction "extends only to those cancelled solications [*sic*] where legal action was instituted *before* cancellation." Plaintiff's Response to Defendant's Motion to Dismiss, at 3 (emphasis in original) (citations omitted). Second, plaintiff contends that it initiated this action to enforce its statutory rights under the Administrative Procedure Act ("APA" or "Act"), 5 U.S.C. § 701 *et seq.*, and the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 14.404–1(a)(1) (1984), and not its contractual rights pursuant to the bid solicitation. Plaintiff thus argues that the jurisdictional prerequisites of the FCIA are not applicable in this case and that this Court is obligated to enforce plaintiff's rights under the APA and the FAR. Finally, plaintiff relies on particular language in the legislative history to suggest that Congress intended the Claims Court and the district courts to share concurrent jurisdiction over pre-award contract claims when it enacted the FCIA. These contentions will be dealt with *seriatim.*

**The Federal Courts Improvement Act of 1982**

On October 1, 1982, § 133(a) of the FCIA became effective, providing in relevant part:

> (3) to afford complete relief on any contract claim brought before the contract is awarded, the [Claims] court shall have *exclusive* jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

Pub.L. 97–164, 96 Stat. 25, 28 U.S.C. § 1491(a) (emphasis added). A number of courts which have reviewed this provision have concluded that the clear and unambiguous language of the statute vests exclusive jurisdiction in the Claims Court to hear *pre-award* contract claims seeking declaratory and injunctive relief. *See, e.g., American Coastal Line Joint Venture v. U.S. Lines,* 580 F.Supp. 932, 935 (D.D.C.1983); *Inter-Con Securities Systems, Inc. v. Orr,* 574 F.Supp. 250 (D.D.C.1983); *American District Telegraph v. Department of Energy,* 555 F.Supp. 1244, 1247 (D.D.C.1983); *Opal Manufacturing Co. v. UMC Industries, Inc.,* 553 F.Supp. 131, 133 (D.D.C. 1982); *see also B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 721 n. 4 (2d Cir.1983) (dictum).

Several other courts, however, have analyzed the legislative history of the FCIA and reached a contrary result. *See Coco Brothers Inc. v. Pierce,* 741 F.2d 675, 677 (3d Cir.1984); *Acme of Precision Surgical Co., Inc. v. Weinberger,* 580 F.Supp. 490 (E.D.Pa.1984). These courts have relied on specific passages of legislative history in concluding that Congress did not intend to take away the district court's power to hear pre-award cases when it enacted the FCIA. *See* The Report of the House Judiciary Committee, H.R.Rep. No. 312, 97th Cong. 1st Sess. 43–44 (1981); The Report of the Senate Judiciary Committee, S.Rep. No. 275, 97th Cong., 1st Sess., 22–23 (1981), *reprinted in* 1982 U.S.Code Cong. & Admin.News 11, 33.

The parties disagree as to the role these committee reports should play in the Court's interpretation of § 1491(a)(3). Plaintiff asserts that resort to this legislative history is necessary in order to understand fully the meaning of the word "exclusive." Moreover, plaintiff avers that the "surest way to misinterpret a statute or a rule is to follow its literal language without reference to its purpose." *Coco Bros., Inc., supra,* at 679, *quoting Viacom International, Inc. v. Federal Communications Commission,* 672 F.2d 1034, 1040 (2d Cir.1982) (citations omitted). Defendants retort that "where the language of a statute is clear ... congressional committee reports may not be considered as an aid construction of the statute." Defendants' Reply Brief, at 5. *See United States v. Missouri P.R. Co.,* 278 U.S. 269, 49 S.Ct.

133, 73 L.Ed. 322 (1929); *George Van Camp & Sons Co. v. American Can Co.,* 278 U.S. 245, 49 S.Ct. 112, 73 L.Ed. 311 (1929); *Standard Fashion Co. v. Magrane-Houston Co.,* 258 U.S. 346, 42 S.Ct. 360, 66 L.Ed. 653 (1922); *Railroad Commission v. Chicago B. & O.R. Co.,* 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371 (1922). Defendants further rely on Black's Law Dictionary to suggest that "exclusive" is susceptible of only one meaning. Black's Law Dictionary, 506 (rev. 5th ed. 1979).

■ It is well settled that "[t]he starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring); *see also Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); *Greyhound Corp. v. Mount Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978); *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Opal Manufacturing, supra,* at 133. And where the terms of the statute are clear and unambiguous, ordinary judicial inquiry is complete, *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981), and the Court must enforce the statute according to its terms. *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Adams Exp. Co. v. Kentucky,* 238 U.S. 190, 35 S.Ct. 824, 59 L.Ed. 1267 (1914); *United Mine Workers of America v. Federal Mine Safety and Health Review Commission,* 671 F.2d 615, 621 (D.C.Cir.1982). More importantly, legislative history "may not be used as a means for construing a statute contrary to its plain meaning." *United Mine Workers, supra,* at 621. *See also Pennsylvania Railroad Co. v. Inter-*national Coal Mining Co., 230 U.S. 184, 199, 33 S.Ct. 893, 897, 57 L.Ed.2d 1446 (1913); *Federal Trade Commission v. Manager, Retail Credit Co.,* 515 F.2d 988, 995 (D.C.Cir.1975); *Committee for Humane Legislation, Inc. v. Richardson,* 414 F.Supp. 297, 308 (D.D.C.1976).

■ This Court is of the opinion that the language of § 133(a)(3) must be read to vest jurisdiction in the Claims Court for pre-award contract claims, to the exclusion of this and all other courts. Because the wording of this section is clear and unambiguous, resort to the legislative history is unwarranted in this case and would represent little more than judicial tampering. Congress could not have been any more direct when it stated: "... the [Claims] court shall have *exclusive* jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper ...." 28 U.S.C. § 1491(a)(3) (emphasis added). This Court has no power to rewrite the statute.

For these reasons, plaintiff's contention that this Court shares concurrent jurisdiction with the Claims Court over pre-award contract claims is rejected.

**Administrative Procedure Act**

■ In its reply brief, plaintiff asserts that, regardless of whether there is concurrent jurisdiction over the subject matter here, it has initiated the instant action pursuant to its statutory rights under the bid solicitation.[3] In an effort to bolster this argument, plaintiff maintains that at the time it filed its complaint the bid solicitation had been canceled and the "parties were no longer in a 'pre-award' posture." Plaintiff's Response at 4. Therefore, plaintiff argues, this matter must be entertained in federal district court because the Claims Court does not have the authority to hear (1) pre-award cases filed after cancellation of a bid solicitation or (2) suits

---

**3.** The old Court of Claims established the judicially created doctrine of implied contract in the bid solicitation process. Thus, after issuing an IFB, the Government is required to "fully and fairly consider" all competitive bids submitted in response to its solicitation. *Keco Industries Inc. v. United States,* 428 F.2d 1233, 1237, 192 Ct.Cl. 773 (1970); *see also ATL, Inc. v. United States,* 735 F.2d 1343, 1344 (Fed.Cir.1984); *Caci Inc.-Federal v. United States,* 719 F.2d 1567, 1574 (Fed.Cir.1983); *John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983).

brought pursuant to the APA in order to challenge the legality of government action.

Upon review of the relevant case and statutory precedent, this Court must reject both contentions. First, the Claims Court, on several occasions, has entertained pre-award actions which were initiated after the cancellation of a bid solicitation. *See Kinetic Structures Corporation v. United States*, 2 Cl.Ct. 343, 344 (1983); *P. Francini & Co., Inc. v. United States*, 2 Cl.Ct. 7, 8–9 (1983). In fact, those courts made no distinction between pre-award suits filed prior to or after the cancellation of the bid solicitation. This Court cannot conceive of a rational reason why such a distinction should create jurisdiction in this action. Because the Claims Court has the authority to hear this cause, therefore, plaintiff's first argument is rejected.

Plaintiff's second assertion, although well founded in logic, also fails to create jurisdiction in this Court. It nevertheless deserves greater attention. Section 10(a) of the APA provides, in relevant part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground....

5 U.S.C. § 702. Furthermore, section 10(b) of the Act adds the condition that:

... [i]f no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. *Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law,* agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

5 U.S.C. § 703 (emphasis added). And section 10(c) of the APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review ...." 5 U.S.C. § 704. These statutory passages clearly indicate that the APA was enacted as a measure to afford relief not otherwise obtainable.

In the instant action, plaintiff seeks to invoke the Act to require this Court to award it equitable relief. More specifically, plaintiff has brought a contract-based claim under the guise of its statutory rights. Although plaintiff maintains that it is not relying on any implied or express contract rights, Plaintiff's Response at 5–7, it is in effect requesting nothing more than the award of the government contract which it believes it deserves. Plaintiff's complaint, thus, must be considered by this Court as a pre-award contract claim which should be adjudicated in the Claims Court pursuant to § 133(a)(3) of the FCIA, 28 U.S.C. § 1491(a)(3), and not in a federal district court.

The parties have contested the issue as to whether the Claims Court has jurisdiction to hear claims brought pursuant to the APA. Plaintiff has cited several Claims Court decisions in which the courts have declined to hear such complaints for the very fact that "the statutes and regulations governing the structure of the bid solicitation process create statutory rather than contractual obligations." *Ingersoll-Rand Co. v. United States*, 2 Cl.Ct. 373, 376 (1983). *See also Downtown Copy Center v. United States*, 3 Cl.Ct. 80, 82 (1983); *Indian Wells Valley Metal Trades Council v. United States*, 553 F.Supp. 397, 399, 1 Cl.Ct. 43 (1982). In *Downtown Copy Center*, the newly established Claims Court stated that:

the United States owes bidders no contractual duty to comply with procurement regulations. Accordingly, the plaintiff's claims asserting defects and unfairness in the bid solicitation process itself allege a breach of the government's statutory duty to comply with procurement regulations rather than a breach of an implied-in-fact contract to fully and fairly consider the plaintiff's bid. Because this Court's equity jurisdic-

tion depends upon the existence of a contractual relationship, a duty owed by virtue of a statute or regulation cannot, under the plain terms of § 1493(a)(3), justify exercise of that authority.

3 Cl.Ct. at 82 (citations omitted). In response, defendants have cited *Caci, Inc.-Federal v. United States,* 719 F.2d 1567 (Fed.Cir.1983), for the contrary proposition, asserting that the United States Court of Appeals for the Federal Circuit overruled the previously mentioned cases in hearing an APA suit.

Because this Court has decided the cause on other grounds, it is not necessary to reach the question whether the Claims Court is vested with jurisdiction to hear claims brought pursuant to the APA.

In conclusion, it is clear that this Court does not possess the requisite subject matter jurisdiction in this case. Defendants' motion to dismiss is, therefore, GRANTED.