CADDELL CONSTRUCTION
CO., Plaintiff,

v.

The UNITED STATES

and

Black-Bodenhamer, A Joint
Venture, Intervenor.

No. 7–85C.

United States Claims Court.

Jan. 11, 1985.

Michael A. Caddell, Houston, Tex., attorney of record for plaintiff. Bracewell & Patterson, Houston, Tex., of counsel.

Harry L. Griffin, Jr., Atlanta, Ga., attorney of record for intervenor Black-Bodenhamer, A Joint Venture.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant. George J. Affe and Lawrence J. Lippolis, Dept. of the Navy, Washington, D.C., of counsel.

## OPINION and ORDER

HARKINS, Judge:

On January 7, 1985, plaintiff filed a complaint seeking injunctive and declaratory relief related to a solicitation of the Department of the Navy for a contract to construct a submarine headquarters administrative building at Kings Bay, Georgia. On January 8, 1985, plaintiff filed its application for a preliminary injunction, and an order for a hearing was entered January 8, 1985. Pursuant to the order, a hearing was held on January 10, 1985, on plaintiff's complaint and application for a preliminary injunction, plaintiff's motion to advance and consolidate trial on the merits with preliminary injunction hearing, and defendant's motion to dismiss. At the start of the hearing, Harry L. Griffin, Jr., verbally moved that Black-Bodenhamer, A Joint Venture, and low bidder on IFB No. N68248–85–B–5016, be permitted to intervene and participate in this proceeding. Mr. Griffin's motion was allowed.

During the proceedings, plaintiff called one witness, John Caddell, and intervenor called one witness, Douglas M. Bodenhamer. Depositions taken in the District Court proceeding captioned *Caddell Construction Co., Inc. v. John F. Lehman, Jr., et al.*, 599 F.Supp. 1542, District Court for the Southern District of Georgia, Brunswick Division, and exhibits proferred by the parties were admitted.

Pursuant to the January 8, 1985, order, plaintiff filed a brief in support of its application, and requested findings of fact, conclusions of law, and order. Defendant filed a supplement to its opposition to plaintiff's request for injunctive relief, and an affidavit by James S. Beyer.

On consideration of the pleadings, affidavits, depositions, and the record of the January 10, 1985, proceeding, the following findings of fact and conclusions of law are made.

FINDINGS OF FACT

1. This case involves IFBs issued by the Officer in Charge of Construction TRIDENT (OICC TRIDENT), St. Marys, Georgia, a unit of the Naval Facilities Engineering Command (NAVFAC), for the construction of a combined Submarine Base Administrative Building and Communications Building (Admin Building). NAVFAC TRIDENT determined that only small business concerns would be eligible for award of the contract to construct the Admin Building.

2. On September 21, 1984, IFB No. N68248–82–B–2016 (IFB 2016) was issued for the construction of the Admin Building. Copies of the IFB were sent to more than 800 firms believed to be interested in bidding on the project; 249 companies requested and were sent copies of the IFB plans and specifications. The IFB provided that sealed bids would be publicly opened on November 1, 1984.

Paragraph 10 of the IFB, captioned "Award of Contract" provided:

(b) The Government may, when in its interest, reject any or all bids or waive any informality in the bids received.

On October 17, 1984, OICC TRIDENT issued two amendments to the IFB plans and specifications.

3. The bids were opened and publicly announced on November 1, 1984; two companies had submitted bids. Caddell Construction Co., Inc. (plaintiff) bid $8,310,000, and was the apparent low bidder. The other bid was $8,520,000, submitted by the Robert Gay Construction Company, Jacksonville, Florida (Gay). The Government estimate of $7,300,000 was announced at the bid opening. Plaintiff's bid was 13.8% above the Government estimate and Gay's bid was 16.7% above the Government estimate.

4. The past procurement experience of OICC TRIDENT established that the advertisement of small business set aside contracts similar to that for the construction of the Admin Building generally resulted in the receipt of from 5 to 15 bids, many being in amounts well below the Government estimate.

5. On November 1, 1984, OICC TRIDENT directed the IFB be reviewed for errors and ambiguities. The review included inquiries to companies that had submitted bids on such projects in the past, and inquiries to some of the companies to which copies of the IFB had been sent.

6. On November 2, 1984, one day after bids on IFB 2016 were opened, an announcement advertising the re-solicitation of the Project was sent to the Commerce Business Daily (CBD), a publication of the Commerce Department, for inclusion in the November 8, 1984, issue of the CBD.

7. During this review of the IFB, OICC TRIDENT personnel discovered an error in the provision concerning liquidated damages for unexcused delays in completing the project. Pursuant to formulas contained in the NAVFAC Contracting Manual (P–68), the liquidated damages should have been set at approximately $1,600 per day. Due to an administrative error, Amendment, No. 0001 to the IFB stated the contractor's anticipated liability for delay could be in excess of $11,000 per day, more than seven times the proper amount. Review of the IFB revealed other errors, omissions and ambiguities in the specification for the irrigation system, vault, borrow site, and the chilled water system. OICC TRIDENT concluded the IFB required items that were in excess of the Government's needs (Contractor Quality Control (CQC) plan and installation of fire alarm system), not appropriate for purchase using military construction funds (telephone), or better deferred until a later date in order to insure compatibility with future construction plans (fiber-optics communication systems). OICC TRIDENT concluded the Government's estimate for the project was reasonable.

8. The error in liquidated damages had a negative impact on the number of the bids and tended to inflate bid prices. Some concerns did not submit bids because of concern for the potential impact of the liquidated damages clause.

9. Because of the excessive bid prices and the errors in the IFB, OICC TRIDENT decided on November 6, 1984, to cancel IFB 2016 and readvertise a revised project. On November 15, 1984, OICC TRIDENT issued IFB No. N68248–85B–B–5016 (IFB 5016). IFB 5016 established a bid opening date of December 18, 1984.

10. The project as revised in IFB 5016 established three phases for the completion of the work: Phase I, the Communications Center; Phase II, the Administration Building proper; and Phase III, the site work. Liquidated damages were $600 per day for Phase I, $900 per day for Phase II, and $100 per day for Phase III. The maximum daily liquidated damages was limited to $1,600 per day.

IFB 5016 eliminated the fiber optics and telephone systems, clarified the location of the borrow pit, reduced the requirements for the contractor quality control program, and deleted the requirement to install the fire alarm system.

11. On November 7, 1984, OICC TRIDENT advised plaintiff by letter that all bids under IFB 2016 were being rejected and that "This action is being taken due to all bids received being substantially in excess of the Government estimate for this work."

On November 26, 1984, OICC TRIDENT rejected plaintiff's request for a meeting to review the Government's estimate for IFB 2016. The letter states:

> We are required to make a determination that the prices offered are reasonable prior to making an award. In addition to determining that the bid price was unreasonable based on a validated comparison with the government's estimate, the Officer in Charge of Construction (OICC), TRIDENT discovered that some requirements were defectively specified, con-

tract completion phasing was inappropriate and inaccurate liquidated damages were set forth. Accordingly, OICC TRIDENT properly made the determination to reject all bids as excessive.

We believe the lack of bid response was due, in part, to the amount of liquidated damages cited in Amendment No. 0002 to the solicitation and to the other specification problems set forth above. The project has been readvertised under Solicitation No. N68248–85–B–5016 with a December 18, 1984, bid opening date. The contract completion phasing has been changed, the liquidated damages have been decreased and the defective specification corrected in the new solicitation. A better bid response, with more reasonable bids, is expected as a result.

12. Plaintiff submitted a bid on IFB 5016.

13. On December 18, 1984, bids in response to IFB 5016 were opened. The bids and the Government's estimate were:

| Company | Bid |
| --- | --- |
| Black-Bodenhamer | $7,594,000 |
| R.B. Gay Const. Co. | $7,666,000 |
| Caddell Const. Co., Inc. | $7,848,000 |
| Robert Gay Const. Co. | $8,121,000 |
| Government Estimate | $7,498,000 |

OICC TRIDENT proposes to award a contract on IFB 5016 on January 15, 1985.

## CONCLUSIONS OF LAW

■ This court's jurisdiction to grant equitable relief is found in 28 U.S.C. § 1491(a)(3); jurisdiction is limited to a "contract claim" brought "before the contract is awarded." Unless a complaint is filed in this court before the contract is awarded, this court is without jurisdiction to provide equitable relief. *United States v. Grimberg,* 702 F.2d 1362 (Fed.Cir.1983).

■ A "contract claim" under section 1491(a)(3) arises from the implied contract, that exists by virtue of the bid solicitation process, that guarantees that responsive bids will be fully and fairly considered. *United States v. Grimberg,* 702 F.2d at 1367. The implied-in-fact contract that arises out of the bid solicitation process,

and which guarantees the bidder full and fair consideration, includes a requirement that there be compliance with procurement regulations applicable to that solicitation, and recognition of applicable constitutional and statutory criteria. *Electro-Methods, Inc. v. United States,* 728 F.2d 1471, 1475 (Fed.Cir.1984).

■ The record establishes that plaintiff had submitted a bid on IFB 5016, and that no contract has been awarded on that IFB when the complaint was filed on January 7, 1985. The complaint asserts that, in the solicitation of bids for this construction project, the requirements of the Federal Acquisition Regulations § 14.404–1 (Cancellation of Invitations After Opening) have not been followed by OICC TRIDENT. In these circumstances, plaintiff's application for a preliminary injunction is a contract claim within the scope of 28 U.S.C. § 1491(a)(3).

■ In order to establish any entitlement to a temporary restraining order or preliminary injunction, plaintiff must demonstrate four factors: (1) that it will suffer a specific irreparable injury if the procurement is not enjoined; (2) that it is likely to succeed on the merits of its claim; (3) that the harm to be suffered by it outweighs the harm to the Government and third parties if the procurement is enjoined; and (4) that the granting of injunctive relief serves the public interest. *Washington Metropolitan Area Transit Commission v. Holiday Tours,* 559 F.2d 841 (D.C.Cir.1977); *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921 (D.C.Cir.1958).

■ Plaintiffs seeking injunctive relief bear the burden of establishing the factors for entitlement. The standards applicable to injunctive relief in this court impose a heavy burden on plaintiffs. Injunctive relief under section 1491(a)(3) should be awarded only in extremely limited circumstances. *United States v. Grimberg Co.,* 702 F.2d at 1372; *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983). Procurement officials who are responsible

for making awards are, and should be, given wide discretion in the evaluation of offers. *Big Bud Tractors, Inc. v. United States,* 2 Cl.Ct. 188, 193 (1983). An injunction should issue only when it has been clearly and convincingly shown that the procurement agency's proposed award of a contract is without any rational basis. *Baird Corp. v. United States,* 1 Cl.Ct. at 664.

The Federal Acquisition Regulations, in an advertised procurement, require award of a contract after bids have been opened "unless there is a compelling reason to reject all bids and cancel the invitation." The regulation provides that invitations may be cancelled before award but after opening when the contracting officer "determines in writing that all otherwise acceptable bids received are at unreasonable prices." 48 C.F.R. § 14.404-1(c)(6).

■ The authority vested in the contracting officer to decide whether to cancel an IFB and readvertise is extremely broad. A determination concerning the unreasonableness of the prices bid is a matter of administrative discretion which should not be questioned unless the determination is shown to be unreasonable or that there is a showing of fraud or bad faith.

■ In IFB 2016, the Government retained discretion, when in its interest, to cancel all bids without liability. The content of the phrase "compelling reasons" includes unreasonably high bids. Defective specifications, mistaken contractual provisions and erroneous specifications, in appropriate cases, may be compelling reasons within the discretion of the contracting officer for rejection of all bids. *See American Gen. Leasing Inc. v. United States,* 587 F.2d 54, 218 Ct.Cl. 367 (1978); *Eagle Const. Corp. v. United States,* 4 Cl.Ct. 470 (1984).

■ The record in this case demonstrates that there was a compelling reason for defendant to cancel IFB 2016 and revise the project for resolicitation. The contracting officer determined that the bids received on IFB 2016 represented unrea-

sonably high prices. In the circumstances, the conclusion that unacceptably high prices were present because plaintiff's bid was 13.87 percent and the only other bid was 16.7 percent over the Government's estimate, is not unreasonable, and cancellation of the IFB was appropriate. Cancellation was particularly appropriate against the background that defendant's decision to cancel also was based upon defective specifications and changed requirements.

On these facts and the applicable law, there is no basis to conclude that plaintiff likely will succeed on the merits of its claim. Accordingly, plaintiff is not entitled to injunctive relief on this factor.

■ Further, with respect to the requirement that a preliminary injunction will not be granted unless there is a showing that the harm to be suffered by plaintiff outweighs the harms to the Government and third parties, on the facts, plaintiff is not entitled to injunctive relief. While this court would have the power to enjoin defendant from proceeding with an award of a contract on IFB 5016, the court lacks authority to order the Government to award the contract to plaintiff. *Sea-Land Service v. Brown,* 600 F.2d 429 (3rd Cir. 1979); *American Science & Eng., Inc. v. Califano,* 571 F.2d 58 (1st Cir.1978).

In this procurement, a preliminary injunction could only set aside IFB 5016 and direct a new solicitation. Such a procedure would not be in the public interest. The Government's estimates and the bids on two IFBs related to this project, already have been disclosed. Further disclosure would not promote the integrity of the competitive bid process nor ensure fair and equal treatment of all bidders. Any benefit to plaintiff that would result from an injunction at this stage of the procurement process would be counterbalanced by the harm that would be inflicted on intervenor, Black-Bodenhamer, the apparent low bidder on IFB 5016.

On the basis of the foregoing, plaintiff's application for a preliminary injunction is DENIED. Plaintiff's motion to consolidate

**242**

is MOOT. As a practical matter the record in this proceeding is sufficient for a decision on the merits. Plaintiff so recognized at the hearing. Inasmuch as defendant's decision to cancel IFB 2016 was reasonable, plaintiff is not entitled to bid preparation costs or attorney fees.

Defendant's motion to dismiss, in view of the additional materials that have been incorporated in the record, is treated as a motion for summary judgment. Defendant's motion is ALLOWED, and the clerk is directed to dismiss the complaint.